■ LAURONA L. DIBBLE et al., Appellants, v TOWN OF ROTTERDAM, Respondent, and FRATERNAL ORDER OF EAGLES AERIE 3610, INC., Appellant, et al., Defendant. [650 NYS2d 897] —Cardona, P. J. Appeal from an order of the Supreme Court (Lynch, J.), entered August 22, 1995 in Schenectady County, which granted the motion of defendant Town of Rotterdam for summary judgment dismissing the complaint against it.

Plaintiff Laurona L. Dibble and her husband commenced this personal injury action to recover damages for injuries sustained by Dibble on October 26, 1991 when the vehicle she was driving was hit head-on by an automobile driven by defendant Juan Lopez, who was being pursued by Town of Rotterdam Police Officer Martin Minto. Prior to the accident, Lopez attended a birthday party at premises owned by defendant Fraternal Order of Eagles Aerie 3610, Inc. (hereinafter the Eagles Lodge) in the Town of Rotterdam, Schenectady County, where he consumed several alcoholic beverages. At some point after 9:00 P.M., Lopez was observed leaving the Eagles Lodge by Minto, who stated in his deposition testimony that his attention was aroused when Lopez drove off so quickly that the wheels of his vehicle spun in the gravel so that "all the dust and dirt were flying up". Minto saw Lopez speed away from the Eagles Lodge parking lot and spin off into a driveway or yard where he had to back up in order to get out. At that point, Minto pursued Lopez's departing vehicle.

As Minto drove closer to Lopez's car, he observed the vehicle weaving back and forth from its own lane into the opposite lane and, at that time, he turned on his emergency lights and siren. Minto then observed Lopez's vehicle speed up and run a

red light, narrowly missing another vehicle in the intersection which had to swerve to avoid a collision. Minto speeded up to get close enough to Lopez's vehicle to obtain the license plate number. Minto relayed the number to the dispatcher, advised that he was in pursuit of a vehicle that was out of control and then "backed off to a considerable distance * * * that would be safe not only for myself but also the person driving the vehicle in front and the public". After Minto dropped back, he turned off his sirens because he could not hear the dispatcher and also suspected from past experience that the driver of the Lopez vehicle was intoxicated. Minto did not want to further agitate him. According to Minto, the radio dispatcher indicated that other police cars were responding to the scene and Minto warned that the Lopez vehicle would not pull over and the officers should be careful because of Lopez's erratic driving. After the Lopez vehicle ran a stop sign, Minto turned his sirens back on because the speeding vehicle was headed in an area of heavier traffic and he thought that the sirens might warn people of the danger.

Thereafter, Minto observed Lopez approaching a hilly road that included a sharp downhill curve. In his deposition testimony, Lopez stated that he knew the curve was coming but was preoccupied with looking in his rear view mirror, apparently for Minto. Minto stated that he was "[n]ot quite a football field away" when he heard the sound of a collision up ahead. When Minto arrived at the scene he pulled over to the right and saw that Lopez's vehicle had crossed over the center double line and collided with Dibble's vehicle. Lopez admitted that he was exceeding the posted speed limit of 35 miles per hour and an accident investigation conducted by the police department concluded that, at the point of impact, Lopez was driving at a minimum of 65 miles per hour. Minto indicated that he exceeded the posted speed limit in the course of the pursuit, although he did not check his speedometer. Following the accident, Lopez was charged with reckless driving, driving while intoxicated, failure to keep right, imprudent speed, and failure to stop at a red light and a stop sign. A blood alcohol test of Lopez taken after the accident showed his blood alcohol level to be 0.20%.

Along with suing Lopez, plaintiffs also brought suit against the Eagles Lodge and defendant Town of Rotterdam as Minto's employer. Following joinder of issue and discovery, the Town moved for summary judgment dismissing the complaint against it. Supreme Court granted the Town's motion and these appeals by plaintiffs and the Eagles Lodge followed.

We affirm. It is now well settled that a "police officer's conduct in pursuing a suspected lawbreaker may not form the basis of civil liability to an injured bystander unless the officer acted in reckless disregard for the safety of others" (*Saarinen v Kerr*, 84 NY2d 494, 501). This standard requires "evidence of an intentional act of unreasonable character in disregard of an obvious risk that is so great as to make it highly probable that harm would follow and such action must have been taken with conscious indifference to the outcome" (*Mullane v City of Amsterdam*, 212 AD2d 848, 850; *see, Saarinen v Kerr, supra*).

Here, plaintiffs[1] maintain that Minto unreasonably engaged in a high-speed pursuit of an intoxicated and agitated driver who had only committed minor traffic infractions, thereby goading Lopez into the behavior that resulted in Dibble's injuries. According to plaintiffs, it was reckless, and in violation of the police department's own rules, for Minto to continue the pursuit after he called in Lopez's license plate number and determined that the car was not stolen and that Lopez was not wanted for any crimes. However, having observed erratic and dangerous driving on the part of Lopez, Minto "was duty-bound to investigate, using all reasonable means, including pursuit, to stop the lawless vehicle's forward progress" (*Saarinen v Kerr*, 84 NY2d 494, 502-503, *supra; see, Mullane v City of Amsterdam, supra*, at 850).[2]

We do not agree with plaintiffs' argument that triable issues of fact have been raised based upon alleged discrepancies in the testimony of Minto and Lopez. Any conflicts in testimony as to how fast Minto was driving or how close his vehicle was to Lopez's vehicle at various times would not, even if resolved in plaintiffs' favor, by themselves constitute a predicate for the imposition of liability (*see, Powell v City of Mount Vernon*, 228 AD2d 572, 573-574; *see also*, Vehicle and Traffic Law § 1104). In fact, Lopez's testimony is mainly corroborative of Minto's version of events since Lopez admitted speeding and running the traffic light and stop sign. Lopez also conceded that Minto was a distance behind him during the pursuit and, although closer right before the crash, was not "on [his] tail".

---

1. We note that Eagles Lodge adopted plaintiffs' brief on appeal; therefore, references to arguments advanced by plaintiffs should be read to include Eagles Lodge as well.

2. Minto's observations as to Lopez's hazardous conduct are significant as a result of plaintiffs' claim that Minto violated Town rules regarding high-speed pursuits when a simple traffic infraction is involved (*see, Saarinen v Kerr, supra*, at 503, n 3). In light of the undisputed evidence regarding Lopez's conduct, we find that plaintiffs have failed to establish that any alleged violation of police department rules constituted reckless conduct within the meaning of the standard set forth in *Saarinen*.

There is nothing in the record demonstrating that Minto acted recklessly within the meaning of the applicable standards. To the contrary, the proof establishes that "the proximate cause of the accident was [Lopez's] erratic and improper operation of his vehicle, not the manner in which the police officer conducted the pursuit" (*Mullane v City of Amsterdam, supra,* at 850; *see, Palella v State of New York,* 141 AD2d 999, 1001).

The remaining arguments advanced by plaintiffs have been examined and found to be without merit.

Mercure, White, Casey and Spain, JJ., concur. Ordered that the order is affirmed, with costs.