■ Lewis King, Jr., Appellant, v Village of Cobleskill et al., Respondents. [654 NYS2d 439] —Carpinello, J. Appeal from an order of the Supreme Court (Hughes, J.), entered May 30, 1996 in Schoharie County, which, inter alia, granted defendants' cross motion for summary judgment dismissing the complaint.

While fleeing on his motorcycle from a pursuing police vehicle around 3:45 A.M. in the Town of Seward, Schoharie County, plaintiff was seriously injured when his motorcycle went off the road and crashed into a sign. The police vehicle was being driven by defendant Steven Weingard, a police officer with defendant Village of Cobleskill Police Department. The pursuit began on Main Street in the Village of Cobleskill, Schoharie County, after Weingard heard an employee of a local bar tell plaintiff not to drive because he had too much to drink and

Weingard observed plaintiff "almost hit the sidewalk" and his motorcycle "almost [fall] to the side" as the motorcycle pulled out of the bar's parking lot. Despite activated headlights and Weingard's use of the patrol car's loud speaker ordering plaintiff to pull over, plaintiff did not pull over. Rather, plaintiff instigated a high-speed pursuit covering approximately five miles. The crash occurred on a sharp curve in the road. Traffic was light that morning and it was slightly raining for part of the pursuit. Plaintiff, whose blood alcohol level was 0.17%, was charged with driving while intoxicated as a result of this incident.

Plaintiff commenced this action against defendants asserting that Weingard's negligence constituted a proximate cause of the accident. Defendants' cross motion for summary judgment (plaintiff had moved for a bifurcated trial) was granted by Supreme Court. Plaintiff appeals and we now affirm.

A police officer engaged in a high-speed pursuit of another vehicle must comply with the restrictions set forth in Vehicle and Traffic Law § 1104, as well as departmental procedures (*see, Palella v State of New York,* 141 AD2d 999, 1000; *Kerwin v County of Broome,* 134 AD2d 812, 813, *lv denied* 71 NY2d 802). Although "certain emergency privileges are accorded the officer, [the officer] must continue to exercise 'due regard for the safety of all persons' " (*Palella v State of New York, supra,* at 1000, quoting Vehicle and Traffic Law § 1104 [e]). Before liability is imposed upon the operator of an emergency vehicle, factual inferences of *reckless disregard* for the safety of others must be raised (*see,* Vehicle and Traffic Law § 1104 [e]; *see also, Saarinen v Kerr,* 84 NY2d 494, 501; *Mitchell v State of New York,* 108 AD2d 1033, 1034-1035, *lv denied* 64 NY2d 611, 1128). The issue on this appeal is whether the evidence in the record establishes that Weingard's conduct rose to the level of recklessness. Our examination of the record discloses that plaintiff has failed to set forth sufficient evidence to demonstrate the existence of material disputed facts on this issue.

Having heard the bar employee's directive to plaintiff that he should not be driving because he had too much to drink and observing plaintiff's erratic driving as he exited the parking lot of the bar, Weingard was certainly justified in attempting to pull plaintiff over and investigate (*see, McCullen v County of Rensselaer,* 210 AD2d 779, 780; *Bellows v City of Amsterdam,* 157 AD2d 1006). Additionally, inasmuch as Weingard was authorized under department procedures to engage in a high-speed pursuit when it was safe for himself and others, Weingard was also justified in pursuing plaintiff even after plaintiff

began traveling at high speeds. To this end, the undisputed evidence reveals that Weingard promptly radioed his dispatcher about his pursuit of plaintiff's motorcycle and a road block was utilized as an alternative to the high-speed pursuit; plaintiff, however, drove around it.

According to plaintiff's version of events that morning, Weingard, who began following him as soon as he left the bar, activated the lights on his patrol car and verbally ordered him to pull over his motorcycle as the two proceeded up Rose Street. Both directives were disregarded by plaintiff who instead said, "Yea, right" and "took off". According to plaintiff, he was only traveling 25 miles per hour at this time. After coming to a complete stop at the corner of Rose and Elm Streets, plaintiff said "the heck with it" and pulled onto Elm Street. Plaintiff further testified that while proceeding north on Elm Street, he slowed down and pulled over but, seeing Weingard approaching him at a rapid speed, abandoned this attempt to stop, pulled back onto Elm Street and said, "You want to play? Let's go."

As plaintiff proceeded north on Elm Street, he accelerated to speeds between 115 and 125 miles per hour on the straight portions of the road and decelerated to between 30 and 50 miles per hour on curves. According to plaintiff, Weingard remained four or five car lengths behind him and at some points the distance between them was extended to six or eight car lengths. At curves in the road, according to plaintiff, Weingard was able to catch up to him only because he slowed down his motorcycle. However, also according to plaintiff, after his motorcycle manipulated each curve he would again accelerate to speeds of over 100 miles per hour and the distance between him and Weingard would again increase. According to plaintiff's testimony, as he approached the set of curves in which the accident occurred, he slowed down to 40 or 45 miles per hour when "all of a sudden, [his] front wheel came off the road * * * and [Weingard's] bumper hit [his] back wheel". A few seconds after the impact, plaintiff was able to look behind him and observe Weingard's patrol car "backing off" and Weingard applying the brakes. At this point, his own brakes locked and he hit the sign.

Even crediting this version of events, we find that "there is nothing in [Weingard's] conduct demonstrating that he *intentionally* committed acts of an unreasonable character, in disregard of a known risk so great that harm to others was probable" (*Powell v City of Mount Vernon*, 228 AD2d 572, 574 [emphasis supplied]; *see*, *Saarinen v Kerr*, *supra*; *cf.*, *Rouse v Dahlem*, 228 AD2d 777 [police officer intentionally crossed into

opposite lane of traffic and drove into immediate path of the plaintiff's motorcycle]). This version of events reveals that Weingard did *not* keep up with plaintiff's excessively high rates of speed that morning; rather, he remained behind plaintiff at all times, catching up to him only near curves when plaintiff dramatically slowed down his motorcycle. It also reveals that Weingard attempted to stop his vehicle by fully applying his brakes as he rounded the curve and came upon plaintiff's motorcycle.

There is no evidence that Weingard intentionally attempted to impact plaintiff's vehicle in an effort to stop it or in any way attempted to force plaintiff off the road (*cf., Rouse v Dahlem, supra*). Based on the facts as presented by plaintiff, we find that Weingard's conduct in his pursuit of plaintiff, viewed at the time and under the circumstances in which he acted and not in retrospect (*see, Saarinen v Kerr, supra*, at 500-501), may have been negligent but in no way rose to the level of being reckless. Accordingly, Weingard's conduct falls within the ambit of the qualified privilege afforded him by Vehicle and Traffic Law § 1104, and thus the order of Supreme Court should be affirmed (*see generally, Mullanne v City of Amsterdam*, 212 AD2d 848).

As a final matter, the affidavit of plaintiff's expert witness, based on conjecture and speculation and often at odds with *plaintiff's* own description of the incident, does not establish that Weingard's conduct rose to the level of reckless disregard for the safety of others.

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Ordered that the order is affirmed, with costs.