■ JANE DOE et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 81074.) [700 NYS2d 554] —Yesawich Jr., J. Appeals from two judgments of the Court of Claims (Benza, J.), entered in July 21, 1998, upon a decision of the court in favor of the State.

On September 10, 1988, claimant "Jane Doe" (hereinafter claimant) was operating a rental car on Interstate Route 87 when she was stopped by State Trooper Robert Bennett for allegedly failing to signal while changing lanes and driving erratically. Ultimately, Bennett directed claimant to a remote location and raped her, an offense for which he was subsequently convicted. This conduct prompted claimant and her husband, derivatively, to commence this action against the State for damages for the negligent hiring, supervision and retention of Bennett. The thrust of their claim is that, given the complaints respecting his behavior that had been filed against Bennett before his assault on claimant, the State knew or should have known that he had a propensity for violence and abusing his power as a police officer, yet despite this the State Police allowed Bennett to continue serving as a patrol officer.

At the ensuing trial, the Court of Claims was presented with extensive evidence concerning the procedure followed by the State Police at the time of these events when a complaint was lodged against one of its officers. That procedure and State Police policy contemplated logging each complaint in a police blotter indicating the name of the complainant, the name of the officer as well as the time and date of the complaint, investigating the charge, holding a hearing if the charge was severe enough and, if it was found to be substantiated, prescribing punishment ranging from counseling to dismissal. The Court of Claims determined, and we concur, that the procedures that the State Police had in place in 1988 for the monitoring and disciplining of its officers were eminently reasonable. That these procedures may have been imperfect in some respect does not detract from this conclusion.

Claimants introduced evidence concerning four complaints made against Bennett prior to his assault on claimant, which they maintain should have placed the State on notice as to his violent proclivities. In July 1987—approximately one year prior to the incident—Bennett's wife (hereinafter Mrs. Bennett) informed Bennett's Troop Commander that Bennett was physi-

cally abusing her. On the advice of the State Police, Mrs. Bennett obtained an order of protection from Family Court against Bennett. A short time thereafter, at Mrs. Bennett's insistence, that order was withdrawn and she requested that the State Police investigation be abandoned. She was advised that the investigation would continue in accordance with State Police regulations and consequently she and Bennett were interviewed, at which time they each assured the investigator that the matter had been magnified out of proportion and that they intended to reconcile. The investigation was therefore closed; no violations of regulations were found to have occurred and the Bennetts were left to resolve their difficulties.[1]

As a result of an encounter with Bennett on July 6, 1988, in which he ticketed her for an obstructed view of her vehicle's rear window, Leslie Donahue filed a complaint charging that Bennett had sexually harassed her. She alleged that after Bennett stopped her, he asked inappropriate questions about her personal life and made her walk back to his automobile to receive her ticket. After Bennett drove off, Donahue stated that he did a U-turn and waved at her as she drove away. The matter was investigated pursuant to State Police policy, including the interviewing of both Donahue and Bennett. Although Bennett was counseled for making her walk to his car—doing so was not considered good practice from a driver safety and liability standpoint—Bennett was not found to have violated any regulations or to have engaged in misconduct. Further, Donahue's veracity was questioned by the officer investigating the incident.

A third complainant, apparently driving in violation of the seatbelt law and ticketed by Bennett for an incorrect address on her license, testified that she complained about Bennett to both the Loudonville and Malta State Police barracks in April or May 1988. There was, however, no record that the complaint was received or investigated. This complainant testified that when Bennett stopped her, he stared at her breasts and legs and made her get into his patrol car while he wrote the ticket. Not insignificantly, she acknowledged that Bennett made no suggestive comments. The Court of Claims determined that this complaint was never received and, hence, that the State Police could not be charged with knowledge thereof.

The fourth complaint was filed in July 1988 by Billie

---

**1.** As a result of this investigation Bennett was counseled for his failure to keep the State Police informed of his whereabouts while on annual leave from July 12 through 15, 1987, a fact that came to light during the investigation.

Albrecht, Bennett's girlfriend of one year. Albrecht reported that when she had attempted to break off her relationship with Bennett he harassed and threatened her. The complaint was the subject of a State Police investigation which was undertaken from August 1988 until November 1988. An account of that investigation, as limned by those involved and in numerous reports prepared in conjunction therewith, discloses that in addition to interviewing both Bennett and Albrecht, her telephone line was tapped and she was physically surveilled in an effort to corroborate that Bennett was harassing her. At the investigation's end, it was concluded that Albrecht was credible and that, in denying that he had harassed Albrecht, Bennett was not. As a result, Bennett was censured and placed on probation for 90 days. Significantly, this investigation was still in progress when Bennett assaulted claimant.

In addition to these four incidents, claimants offered the testimony of an expert who opined that the State Police policies and procedures for investigating complaints against its personnel were wanting. At the conclusion of the trial, the Court of Claims dismissed the claim upon finding that the State had not acted unreasonably in failing to suspend Bennett, that the complaints against him were thoroughly investigated, that claimants had not proved by a fair preponderance of the evidence that the State had negligently hired or retained Bennett and that the investigation of him was a discretionary function entitled to immunity. Judgment was entered accordingly and this appeal ensued.

We affirm. It is indisputable that "when official action involves the exercise of discretion or expert judgment * * * and is not exclusively ministerial", the State "generally is not answerable in damages for the injurious consequences of that action" (*Haddock v City of New York*, 75 NY2d 478, 484; *see, Mon v City of New York*, 78 NY2d 309, 313; *Arteaga v State of New York*, 72 NY2d 212, 217). Here, the investigation of the complaints against Bennett, the determination as to the level at which those investigations were to proceed, the evaluation of the witnesses' credibility, whether the charges were founded, unfounded or unsubstantiated, and, if founded, the punishment to be imposed are discretionary decisions to which, if based on a reasoned judgment, governmental immunity attaches (*see, Tango v Tulevech*, 61 NY2d 34, 41; *Davis v State of New York*, 257 AD2d 112, 115; *compare, Howe v Village of Trumansburg*, 199 AD2d 749, *lv denied* 83 NY2d 753). Though not unmindful that when "the retention of an employee may involve a known risk of bodily harm to others, the field in which

[a police official's] discretion may be exercised * * * is limited [and] is superceded by the duty to abate that risk if in related circumstances danger to others is reasonably to be perceived" (*McCrink v City of New York*, 296 NY 99, 106), we are not persuaded by this record that the State Police could have or should have known of Bennett's propensity to rape a random member of the public.

Indeed, of the four complaints that claimants contend gave the State Police notice of Bennett's predisposition to sexually assault females, only two involved strangers Bennett encountered on the job. Regarding these incidents, the investigation of Donahue's complaint exonerated Bennett and even the investigator who looked into these allegations believed they may have been fabricated. But even assuming the truth of Donahue's version of events, we are not convinced that the State Police could or should have determined from these circumstances that Bennett was a threat. As for the other complaint, it could not have placed the State on notice for the Court of Claims found that it was not received by the State. This determination was largely one of credibility and despite this Court's power in a nonjury case to "independently consider the probative weight of the evidence and the inferences that may be drawn therefrom, where, as here, the court's findings are based in large part upon credibility assessments, they are entitled to deference" (*Munno v State of New York*, 266 AD2d 694, 695).[2]

Lastly, we reject claimants' argument that the Court of Claims improperly denied their request, made on the morning of the trial, to amend their pleadings to add a constitutional tort cause of action. Although this request has its genesis in a changed view of the law (*see, Brown v State of New York*, 89 NY2d 172), which is an extraordinary circumstance sufficient to set aside a court's decision denying leave to amend (*see, Ramsay v Bassett Hosp.*, 158 AD2d 754, *lv denied* 76 NY2d 702), we decline to do so in this instance because of claimants' delay of almost one year in seeking the amendment without offering an excuse therefor and in view of the manifest prejudice to the State.

Cardona, P. J., Crew III and Mugglin, JJ., concur.

Mikoll, J. (dissenting). I respectfully dissent.

In my view, the nature and extent of the prior complaints

---

**2.** The dissent cavalierly ignores or simply overrides the clearly supportable credibility judgments made by the Court of Claims—judgments which that court is in the best position to make.

against State Trooper Robert Bennett were sufficient to place the State Police on notice of his violent propensities, rendering his subsequent attack on claimant "Jane Doe" (hereinafter claimant) reasonably foreseeable and the State liable for the consequences of its decision to retain him on active patrol duty.

Within the 14 months immediately preceding Bennett's attack on claimant, four women complained to the State Police about his conduct. The first report was from Bennett's wife, who averred that when she confronted him about her belief that he was having an affair he threw a quart of milk at her, grabbed her by the neck and pushed her to the floor into the milk, and struck her sides with his fists. The second report was from Bennett's girlfriend, who complained that during the preceding month, while she was attempting to terminate her one-year adulterous affair with him, he harassed her and threatened her life and welfare. On the date of her complaint, she averred that Bennett came to her residence and demanded entry, threatening that if she refused he would gain access by other means. Bennett then grabbed a steak knife from the kitchen sink and threatened her with it, whereupon she fled to a neighbor's home and called the State Police.

The third complaint was from a female motorist in a rental car on the Interstate Route 87 who complained that after pulling her over for not wearing a seatbelt, Bennett questioned her inappropriately as to her age, where she lived and worked, and whether she had a boyfriend. He then entered his patrol vehicle and, after a short while, honked the horn and beckoned her over to his vehicle where he gave her a ticket, not for a seatbelt violation but for having items in the rear deck which allegedly obstructed the view in her rear window. When this woman attempted to remove the items, however, Bennett told her not to worry, that she could do that at any time.

The fourth complainant testified that while driving a rental car on the Interstate Route 87, she was pulled over by Bennett for driving without a seatbelt. Bennett entered his patrol vehicle and, a short while later, honked his horn and beckoned her to his patrol vehicle, directing her to sit inside. During this time, Bennett stared at the woman's breasts and legs, causing her to grow uneasy and uncomfortable. When she sat sideways in the front passenger side of the patrol vehicle, with her feet touching the ground outside, he urged her to get in the car further while leaning toward her and continuing to stare at her. He did not give her a ticket for driving without a seatbelt. Bennett's conduct so unnerved this complainant that the same day she telephoned two separate State Police barracks to report it,

on the second occasion requesting to speak with a Sergeant. Despite the State's claim that they had no record of a complaint from this fourth woman, it was clear from her trial testimony that she had no discernible personal stake in claimant's case, and indeed the Court of Claims expressed no reservation about her credibility. Since the State Police had written procedures governing the reporting of all personnel complaints to troop commanders, it would seem highly unlikely that both telephone complaints from this witness, one to the Malta barracks and one to the Loudonville barracks, could have been accidentally lost. Under these circumstances, the claimed loss would appear to be either negligent or purposeful, so as to justify imputing constructive knowledge thereof to the State (*see, e.g., Blake v City of Albany*, 48 NY2d 875, 877).

The first two complaints clearly establish Bennett's capacity for violence against women and raise serious questions about his emotional stability. I would eschew as wholly irrelevant the distinctions drawn by the Court of Claims, and echoed by the majority, that the first two complaints "involved women with whom Bennett had had a standing relationship". The nature of the conduct speaks for itself. Certainly it is not suggested that violent behavior is any less violent where its target is an acquaintance. The latter two complaints reveal unprofessional and disturbingly inappropriate behavior toward young female motorists, particularly those traveling alone in rental cars. Indeed, the similar particulars in the two motorists' complaints eerily foreshadow the subsequent attack on claimant. Nonetheless, the majority concludes that the Court of Claims properly found this evidence inadequate to place the State Police on notice of Bennett's dangerous propensities or, in their words, "to rape a random member of the public". Such phrasing is, of course, disingenuous in that it ignores the fact that the prior complaints put the State on notice of the risk of harm faced not by "random members of the public" but by (a) women and (b) female motorists operating vehicles, particularly rental cars, on roadways covered by Bennett's patrol duties.

In my view, the fundamental flaw in the reasoning and result of the Court of Claims derives from the perception that "the type of assault conducted on claimant having been of a sexual nature, the propensity which was said to have been displayed by Trooper Bennett's behavior must relate to a predisposition on his part to commit sexual assaults" and the conclusion that "Trooper Bennett's sexual assault on claimant was not accomplished by violent or untoward physical force". Beyond any serious debate, and notwithstanding its "sexual nature", rape

is preeminently a crime of violence. Only under the skewed perception that rape is a "sexual conduct" crime could evidence of Bennett's history of violence against women be considered insignificant in determining the reasonableness of the State's conduct on the basis of the information it possessed. Similarly incomprehensible is Court of Claims' conclusion that Bennett's attack on claimant "was not accomplished by violent or untoward physical force". Claimant was directed to pull her vehicle over by an armed, uniformed State Trooper operating a marked patrol vehicle. She complied with his various directives leading up to the assault while fearing for her life and following her instincts for survival. She was taken to an isolated clearing in the woods and there twice sodomized.

I believe that claimant proffered evidence sufficient to establish that the State Police had actual knowledge of Bennett's dangerous propensities and negligently failed to take appropriate action to prevent the risk of harm to claimant. I would, therefore, reverse the judgments of the Court of Claims and remit for a trial on the question of damages.

Ordered that the judgments are affirmed, without costs.