■ Evan Schieren et al., Appellants, v State of New York, Respondent. (Claim No. 93766.) [722 NYS2d 128] —Carpinello, J. Appeal from a judgment of the Court of Claims (Benza, J.), entered July 28, 1999, upon a decision of the court following a bifurcated trial in favor of the State on the issue of liability.

Claimants commenced this action to recover damages against the State for the serious personal injuries sustained by claimant Evan Schieren (hereinafter claimant) in a car-dirt bike accident which occurred on the evening of May 5, 1994. Claimant was a passenger on the bike when its driver, Neil Kennelly, lost control in an attempt to evade State Trooper William Fitzmaurice who was pursuing them in a marked Trooper vehicle. Some of the circumstances surrounding this pursuit—which spanned a very short distance (approximately 0.6 miles) and was brief in duration (approximately one minute)—were not disputed at the bifurcated trial. For example, it was undisputed that Fitzmaurice observed claimant and Kennelly riding the dirt bike, which had been designed for a single passenger and only for off-road usage, on County Route 67 in the Town of South Cairo, Greene County, and that neither occupant was wearing a helmet. It is for this latter violation that Fitzmaurice gestured for Kennelly to pull over. Kennelly ignored the gesture and instead accelerated down Route 67.

It was also undisputed that Fitzmaurice pursued the bike and ultimately caught up with it moments later, at which time he pulled parallel to it with his lights and sirens activated and again gestured for Kennelly to pull over. Fitzmaurice then slowed down his vehicle and repositioned it behind the dirt bike. At precisely the same time, Kennelly, attempting to evade Fitzmaurice by heading toward a bike trail, slowed down the dirt bike and then drove completely off Route 67 into an adjacent field to the right of the road. It was at this point in time that the parties' version of events drastically differed.

Claimant and Kennelly testified that Fitzmaurice followed them off the road and then struck the dirt bike with his vehicle, thereby causing Kennelly to lose control of the bike and both occupants to fall to the ground with the Trooper car landing on claimant. Claimant specifically testified that they were struck by the front bumper on the passenger side of Fitzmaurice's car. Of note, neither claimant nor Kennelly (nor any other witness) actually saw Fitzmaurice strike the dirt bike. For his part, Fitzmaurice never denied that his Trooper car ultimately came to rest off the road and on top of claimant,

but he testified that he was not following the dirt bike into the grass and denied that he hit it with his vehicle while both were moving. Rather, according to Fitzmaurice, immediately upon repositioning the Trooper car behind the dirt bike, the dirt bike "disappeared" from his view which led him to believe that it had fallen in the road. He thus took evasive action by applying his brakes and turning to the right. By doing so, he came into contact with the then out of control dirt bike on the side of the road.

At trial, the State corroborated Fitzmaurice's version of events through the testimony of an expert witness. The State's expert, who was present at the scene within minutes of the accident and examined the Trooper car, found no physical signs on that vehicle indicating that the rear tire of the dirt bike came into contact with its passenger side front bumper at any time, particularly while both vehicles were moving. Specifically, no damage, erasure marks or other indication of contact on the passenger side front bumper was identified. According to this expert, however, there were erasure marks on the driver side front bumper of the vehicle, as well as on the driver side tire and door.

These markings, coupled with witness interviews that evening and other physical evidence at the scene, led the State's expert to conclude that when the dirt bike left the paved road, the leaning of the bike and weight of its two occupants caused the right foot peg to contact the ground, causing the bike to go down[1] As the bike went down, this expert's opinion continued, Fitzmaurice braked and turned abruptly to the right at which point the bike came under the driver side bumper and the two vehicles intertwined for a period of time until they finally came to rest. This expert unequivocally testified that no contact was made between the dirt bike and the Trooper car prior to the bike losing control. Of note, he further testified that there were no allegations by anyone at the scene of the accident with whom he spoke that evening, including Kennelly himself, that there was contact between these vehicles prior to the dirt bike losing control.

While claimants also presented testimony from an expert witness, this expert did not opine that Kennelly lost control *because* Fitzmaurice followed him off the road and rear-ended the dirt bike. While this expert testified that there was no justification or advantage for Fitzmaurice to follow Kennelly off

---

1. While both claimant and Kennelly denied that the bike leaned to the right as it left the road, another of claimants' witnesses testified that he saw the bike leaning toward the right just prior to the accident.

the road, he did not offer an expert opinion, based upon his review of the physical evidence, that this is actually what transpired. Thus, the opinion of the State's expert concerning the cause of the accident went essentially unchallenged by competing *expert* evidence.

At the conclusion of the trial, the Court of Claims resolved this significant factual dispute in favor of the State, that is, the court rejected claimants' contention that Kennelly lost control of the dirt bike because Fitzmaurice struck it with his Trooper car. In dismissing the claim, the court further determined that Fitzmaurice was engaged in a pursuit of Kennelly that evening, that such pursuit was permissible under the circumstances, that he did not act with reckless disregard for the safety of others and that the sole cause of the accident was the conduct of Kennelly. Claimants now appeal.

Claimants contend that reversal of the judgment in favor of the State is warranted because the evidence at trial established that Fitzmaurice acted with reckless disregard for the safety of claimant. The underpinning of this argument, however, is their contention that the Court of Claims erred in its conclusion as to how this accident occurred. While this Court may "independently consider the [relative] probative weight of the evidence and the inferences that may be drawn therefrom" in a nonjury trial (*Munno v State of New York*, 266 AD2d 694, 695), the Court of Claims' resolution of this particular factual dispute was based in large part on its assessment of witness credibility and is thus entitled to deference (*see, Sullivan v State of New York*, 276 AD2d 989; *Doe v State of New York*, 267 AD2d 913, 916, *lv denied* 95 NY2d 759). Upon giving such deference and upon our review of the record, we find that the factual finding by the court concerning the manner in which the accident occurred is fully supported by factual and expert evidence and we will not disturb it.

We also note that Fitzmaurice's conduct in pursuing Kennelly may not form the basis of civil liability unless Fitzmaurice acted in reckless disregard for the safety of others, particularly claimant (*see, Saarinen v Kerr*, 84 NY2d 494, 501). This standard has been interpreted to require evidence of "the conscious or intentional doing of an act of an unreasonable character in disregard of a known or obvious risk so great as to make it highly probable that harm would follow, and done with conscious indifference to the outcome" (*Szczerbiak v Pilat*, 90 NY2d 553, 557; *see, Saarinen v Kerr, supra,* at 501; *Mullane v City of Amsterdam*, 212 AD2d 848, 850). Here, Fitzmaurice's conduct, particularly when gauged as of the time and under the circum-

stances in which he acted and not in retrospect, did not rise to the level of being reckless (*see, King v Village of Cobleskill*, 237 AD2d 689, 692).

Although claimants allege that the violation for which Fitzmaurice was pursuing Kennelly—lack of helmets on both occupants—did not justify undertaking a pursuit, we note that their own expert testified at trial that where, as here, a police officer perceives a Vehicle and Traffic Law violation, that officer has the lawful authority to stop the individual to investigate. Claimants' expert further testified that Kennelly's operation of the dirt bike that evening was a threat to the safety of the public and that Fitzmaurice had an obligation to follow him and remove the dirt bike from the highway. Moreover, while Fitzmaurice exceeded the posted 35 mile-per-hour speed limit during some part of the brief pursuit, he testified that his speed never exceeded 50 miles per hour, which was substantially confirmed by other witnesses. It is also undisputed that he was only traveling 17 to 20 miles per hour when he left the road[2] Thus, as noted by the Court of Claims, this was by no means a "high speed chase" (*see, McCullen v County of Rensselaer*, 210 AD2d 779; *cf., King v Village of Cobleskill, supra*).

In any event, the fact that an officer exceeds the speed limit does not by itself constitute a predicate for the imposition of liability (*see, Powell [Black] v City of Mount Vernon*, 228 AD2d 572, *lvs denied* 89 NY2d 806, 807), particularly where, as here, the weather was clear and dry, it was light outside and there was no traffic in the rural area where the pursuit took place (*cf., Fioriello v Sasson*, 255 AD2d 549, *lv denied* 93 NY2d 817). Furthermore, although he ultimately came into contact with the dirt bike and claimant's ejected body on the side of the road, Fitzmaurice cannot be faulted for this unintentional contact, it being the unfortunate consequence of his otherwise reasonable evasive efforts to avoid what he thought was to be a collision in the road (*cf., Rouse v Dahlem*, 228 AD2d 777). To this end, we note that claimants' own expert testified that if an individual is following a "motorcycle" which suddenly disappears from sight, it would be appropriate for that individual to take evasive action by steering in a direction so as to avoid contact upon the roadway.

As a final matter, we also agree with the Court of Claims' conclusion that Kennelly's operation of the dirt bike that evening, not the manner in which Fitzmaurice conducted the

---

2. Notably, claimants' expert did not dispute any factual finding made by the State's expert, including this estimation of Fitzmaurice's speed as he left the road.

pursuit, was the proximate cause of the accident (*see, e.g., Dibble v Town of Rotterdam*, 234 AD2d 733, 736, *lv denied* 89 NY2d 811; *Mullane v City of Amsterdam, supra*, at 850; *Mitchell v State of New York*, 108 AD2d 1033, *lvs denied* 64 NY2d 611, 1128).

Crew III, J. P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.