OPINION OF THE COURT
 

 Titone, J.
 

 Drivers of emergency vehicles have a primary obligation to respond quickly to preserve life and property and to enforce the criminal laws. Consequently, in recognition of these drivers’ special needs, the Legislature enacted Vehicle and Traffic Law § 1104, which qualifiedly exempts them from certain traffic laws when they are "involved in an emergency operation.” At issue in this appeal are the meaning and effect of the statute’s provisions for civil liability in the event of an accident (Vehicle and Traffic Law § 1104 [e]). Consistent with its language and purpose, we hold that Vehicle and Traffic Law § 1104 (e) precludes the imposition of liability for otherwise privileged conduct except where the conduct rises to the level of recklessness.
 

 The accident underlying this action occurred on a public road in the Village of Massena on March 4, 1988. According to plaintiff’s submissions, Officer McGown, a seven-year veteran of the Village police force, was sitting in his patrol car at about 10:00 p.m. when he observed a dark colored van that fish-tailed and squealed its tires as it made a turn onto a
 
 *498
 
 Village street. Having decided almost immediately to stop the vehicle, McGown followed it and watched its driver, subsequently identified as defendant Kerr, run a stop sign at a speed of approximately 30 m.p.h. and then proceed into a nearby shopping center parking lot.
 

 At that point, McGown activated his patrol car’s red emergency lights. Rather than stopping, the van pulled away. McGown pursued the van behind the shopping center’s stores and turned on his vehicle’s siren. The van continued out onto a public road and drove into the lane for oncoming traffic, passing a red traffic light at the intersection. Concluding that the van was not going to stop in response to his show of authority, McGown reached for his radio with the intention of calling headquarters for help. His efforts were interrupted by the sound of a crash as Kerr’s van collided with a vehicle driven by plaintiff. Subsequent tests revealed that Kerr had been drinking on the night of the accident.
 

 Plaintiff, who was seriously injured as a result of the accident, brought the present action against Kerr and the Village of Massena. With respect to her claim against the Village, plaintiff contended that it should be held vicariously liable for McGown’s lack of due care in pursuing Kerr’s vehicle and liable for its own negligence in failing adequately to train McGown or to adopt an adequate pursuit policy.
 

 Following discovery, the Village moved for summary judgment dismissing plaintiff’s complaint and defendant Kerr’s cross claims against it. In opposition to the motion, plaintiff and defendant Kerr relied principally on the evidence gleaned from McGown’s deposition and testimony at Kerr’s criminal trial.
 
 [1]
 
 According to McGown’s testimony, he had been driving at a rate of approximately 60 m.p.h. by the time the chase terminated in the accident. The posted speed limit in the area was 35 m.p.h. The night was clear, but the roads were wet. McGown observed no traffic on the road until he approached the intersection at which the accident took place. However, there were several fast food restaurants and a V.F.W. meeting hall in the vicinity, and all but one of the restaurants were open. The entire pursuit lasted no more than one or two minutes.
 

 After reviewing the parties’ submissions, Supreme Court granted the Village’s motion and dismissed the complaint and
 
 *499
 
 cross claims against it. The court concluded that "recklessness” was the proper standard for assessing the officer’s conduct and that plaintiff and defendant Kerr had "failed to raise any inference of reckless disregard for the safety of others by Officer McGown.” The court also noted that plaintiff had failed to show how any of the alleged inadequacies in the Village’s training of officers was proximately related to this accident. Indeed, the court held, there was no proof that it was McGown’s conduct in pursuing Kerr rather than Kerr’s own erratic and illegal driving that was the proximate cause of the accident.
 

 On appeal, the Appellate Division reversed and reinstated the complaint and cross claims against the Village. The Court stressed the fact that the pursued Kerr vehicle had been traveling toward a "highly populated area” at the time of the accident (199 AD2d 724, 725). Further, the Court noted, there was a possibility at that relatively early evening hour that there would be traffic on the road. Finally, the Appellate Division cited an affidavit by plaintiff’s expert, which stated, in substance, that the Village’s policies regarding police pursuits were inadequate and that allowing officers to engage in vehicular pursuit without proper training is "inherently dangerous and unsafe.” Accordingly, the Court held, over a dissent by two Justices, there was sufficient evidence to raise questions of fact as to whether McGown had acted with "reckless disregard for the safety of others”
 
 (id.,
 
 at 725) and whether the Village’s pursuit policy and training methods were adequate. The Court then granted the Village leave to appeal to this Court, certifying the following question of law for our resolution: "Did this court err as a matter of law in reversing the order of Supreme Court granting defendant Village of Massena’s motion for summary judgment dismissing the complaint and cross claims against it and denying said motion?”
 

 With respect to the Village’s vicarious liability for Officer McGown’s conduct, the initial critical question is what standard should be applied in evaluating the culpability of that conduct. The touchstone for our analysis is Vehicle and Traffic Law § 1104, which permits the driver of an "authorized emergency vehicle”
 
 (see,
 
 Vehicle and Traffic Law §§ 101, 114-b) to proceed past red traffic lights and stops signs, exceed the speed limit and disregard regulations regarding the direction of traffic, as long as certain safety precautions are observed (Vehicle and Traffic Law § 1104 [b] [l]-[4]). The privileges
 
 *500
 
 afforded by the statute are circumscribed by section 1104 (e), which provides that "[t]he foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.” This statute establishes the standard for determining an officer’s civil liability for damages resulting from the privileged operation of an emergency vehicle.
 

 Because the statute makes reference to both "due regard” and "reckless disregard” for the safety of others, the courts of this State have had some difficulty articulating the precise test for determining a driver’s liability for injuries resulting from the operation of an emergency vehicle. In recent years, the Third Department has adhered to the more exacting standard of "recklessness”
 
 (Dugan v Longo,
 
 169 AD2d 872;
 
 Kerwin v County of Broome,
 
 134 AD2d 812,
 
 lv denied
 
 71 NY2d 802;
 
 Mitchell v State of New York,
 
 108 AD2d 1033,
 
 appeal dismissed
 
 64 NY2d 1128,
 
 lv denied
 
 64 NY2d 611;
 
 Selkowitz v State of New York,
 
 55 AD2d 709;
 
 Dunn v State of New York,
 
 34 AD2d 267;
 
 see also, Palella v State of New York,
 
 141 AD2d 999;
 
 Stanton v State of New York,
 
 29 AD2d 612,
 
 affd
 
 26 NY2d 990). The courts, however, have from time to time also used such terms as "unreasonable under the circumstances”
 
 (Simmen v State of New York,
 
 55 NY2d 924, 926;
 
 Rightmyer v State of New York,
 
 108 AD2d 1047;
 
 Zulauf v State of New York,
 
 119 Misc 2d 135,
 
 affd
 
 110 AD2d 1042;
 
 see also, Strobel v State of New York,
 
 36 AD2d 485,
 
 affd
 
 30 NY2d 629;
 
 cf., Mercado v Vega,
 
 161 AD2d 365, 366,
 
 revd on other grounds
 
 77 NY2d 918 [want of "due care”]) and "negligent”
 
 (Stanton v State of New York,
 
 26 NY2d 990, 992,
 
 supra; Thain v City of New York,
 
 35 AD2d 545,
 
 affd
 
 30 NY2d 524;
 
 Murphy v City of New York,
 
 16 AD2d 678;
 
 Wrubel v State of New York,
 
 11 Misc 2d 878;
 
 see also, Myers v Town of Harrison,
 
 438 F2d 293,
 
 cert denied
 
 404 US 828), either alone or interchangeably with "recklessness,” to describe the level of culpability that will support liability under Vehicle and Traffic Law § 1104 (e). Likewise, courts of other jurisdictions have struggled with the meaning and effect of identically or similarly worded statutes
 
 (e.g., Ruth v Rhodes,
 
 66 Ariz 129, 185 P2d 304;
 
 Lucas v Los Angeles,
 
 10 Cal 2d 476, 75 P2d 599;
 
 Sacramento v Hunger,
 
 79 Cal App 234, 249 P 223;
 
 Archer v Johnson,
 
 90 Ga App 418, 83 SE2d 314;
 
 Martin v Rossignol,
 
 226 Md 363, 174 A2d 149;
 
 *501
 

 Goddard, v Williams,
 
 251 NC 128, 110 SE2d 820;
 
 see also, Duran v Mission Mortuary,
 
 174 Kan 565, 258 P2d 241).
 

 Faced squarely with this question of statutory interpretation for the first time,
 
 [2]
 
 we hold that a police officer's conduct in pursuing a suspected lawbreaker may not form the basis of civil liability to an injured bystander unless the officer acted in reckless disregard for the safety of others. This standard demands more than a showing of a lack of "due care under the circumstances” — the showing typically associated with ordinary negligence claims. It requires evidence that "the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow” and has done so with conscious indifference to the outcome (Prosser and Keeton, Torts § 34, at 213 [5th ed];
 
 see,
 
 Restatement [Second] of Torts § 500).
 

 The use of this higher standard is compelled by the plain language of Vehicle and Trafile Law § 1104 (e). Indeed, the Legislature’s specific reference to "the consequences of [the driver’s]
 
 reckless disregard
 
 for the safety of others” (emphasis supplied) would be unnecessary and, in fact, inexplicable if the conventional criterion for negligence — reasonable care under the circumstances — were the intended standard.
 

 Notably, the common law has long recognized that an emergency situation which leaves little or no time for reflection "itself may be a significant circumstance which * * * should enter into the determination of the reasonableness of the choice of action pursued”
 
 (Ferrer v Harris,
 
 55 NY2d 285, 292). Thus, Vehicle and Trafile Law § 1104 (e)’s mention of "the duty to drive with due regard for the safety of all persons” would have sufficed if the more "flexible” reasonable person standard for conduct in the face of an emergency were all that was contemplated
 
 (see, id.,
 
 at 292). The fact that the Legislature went beyond that formulation and invoked the "reckless disregard” terminology demonstrates beyond question that something more exacting than that traditional inquiry was intended. Accordingly, the only way to apply the
 
 *502
 
 statute is to read its general admonition to exercise "due care” in light of its more specific reference to "recklessness.”
 

 Such an approach also comports with the purposes of Vehicle and Traffic Law § 1104. The statute represents a recognition that the duties of police officers and other emergency-personnel often bring them into conflict with the rules and laws that are intended to regulate citizens’ daily conduct and that, consequently, they should be afforded a qualified privilege to disregard those laws where necessary to carry out their important responsibilities. Where the laws in question involve the regulation of vehicular traffic, the exercise of this privilege will inevitably increase the risk of harm to innocent motorists and pedestrians. Indeed, emergency personnel must routinely make conscious choices that will necessarily escalate the over-all risk to the public at large in the service of an immediate, specific law enforcement or public safety goal.
 

 Measuring the "reasonableness” of these choices against the yardstick of the traditional "due care under the circumstances” standard would undermine the evident legislative purpose of Vehicle and Traffic Law § 1104, i.e., affording operators of emergency vehicles the freedom to perform their duties unhampered by the normal rules of the road. As a practical matter, use of the undemanding ordinary negligence test — or even the more "flexible” common-law negligence test that is applied in emergency situations
 
 (see, e.g., Ferrer v Harris, supra; Rossman v La Grega,
 
 28 NY2d 300) — would lead to judicial "second-guessing” of the many split-second decisions that are made in the field under highly pressured conditions. Further, the possibility of incurring civil liability for what amounts to a mere failure of judgment could deter emergency personnel from acting decisively and taking calculated risks in order to save life or property or to apprehend miscreants. The "reckless disregard” test, which requires a showing of more than a momentary judgment lapse, is better suited to the legislative goal of encouraging emergency personnel to act swiftly and resolutely while at the same time protecting the public’s safety to the extent practicable
 
 (see generally, Campbell v City of Elmira,
 
 84 NY2d 505 [decided today]).
 

 Cases such as this involving vehicular pursuits of lawbreakers demonstrate the soundness of utilizing the "reckless disregard” standard. Having observed erratic and dangerous driving on the part of defendant Kerr, Officer McGown was duty-
 
 *503
 
 bound to investigate, using all reasonable means, including pursuit, to stop the lawless vehicle’s forward progress. Contrary to the Appellate Division’s suggestion, the conduct McGown observed was far more serious than a series of minor traffic infractions.
 
 [3]
 
 Kerr’s actions, which included fish-tailing, squealing of brakes and disregard of traffic signs and signals, plainly suggested that the van’s driver was out of control or perhaps even intoxicated. Even if Kerr was not impaired, it is clear that his driving posed a threat to the public safety. Under these circumstances, the officer should have the right to use whatever means are necessary, short of the proscribed recklessness, to overtake and stop the offending driver.
 

 Measured against the prescribed standard of "reckless disregard for the safety of others,” it is evident that, as a matter of law, Officer McGown’s pursuit of Kerr did not overstep the limits of the statutory qualified privilege. It is true that McGown exceeded the posted speed limit, but that conduct certainly cannot alone constitute a predicate for liability, since it is expressly privileged under Vehicle and Traffic Law § 1104 (b) (3). The other circumstances on which plaintiff and defendant Kerr rely — the wet condition of the road, the possibility of other vehicular traffic in the vicinity, the over-all speed of McGown’s vehicle and McGown’s purported delay in calling his headquarters — are similarly unpersuasive, particularly in the context of an inquiry based on the "reckless disregard” standard.
 

 Officer McGown’s maximum speed of 60 m.p.h. was hardly a "breakneck” pace for a police pursuit on relatively empty, nonresidential streets
 
 (cf., Mercado v Vega, supra).
 
 The wet condition of the roads and the possibility of vehicular traffic in the vicinity undoubtedly augmented the risk involved in the course of conduct McGown undertook, but the risk was one that McGown was entitled to take in the interest of stopping a motorist whose conduct on the road presented a clear and immediate threat to public safety. Finally, McGown’s failure to call in to his headquarters until after the chase was underway is hardly surprising in view of the rapidly unfolding
 
 *504
 
 flow of events and the extremely short time frame in which the entire incident occurred.
 

 The allegations in the complaint and cross claims with respect to the Village’s liability for its own purported misconduct are equally flawed. Plaintiff and codefendant Kerr alleged that the Village’s procedures for training its officers in the art of pursuit were inadequate, but neither was able to show how any changes in the Village’s training program might have altered the course of events in this case.
 

 Plaintiff’s and Kerr’s alternative argument is that the Village’s policy on pursuit gave its officers too much latitude. This argument is based on plaintiff’s expert’s affidavit, which cites various articles and studies and indicates that pursuit policies based primarily on the field officer’s discretion are disfavored among law enforcement professionals. However, the Village’s choice to adopt a "discretionary” rather than a more "restrictive” or "discouraging” model to govern its police pursuits is a matter of governmental policy that "may not be reviewed in a personal injury action founded on negligence,” at least in the absence of irrationality
 
 (McCormack v City of New York,
 
 80 NY2d 808, 811;
 
 see, Haddock v City of New York,
 
 75 NY2d 478, 484;
 
 Mon v City of New York, 78
 
 NY2d 309, 313;
 
 Tango v Tulevech,
 
 61 NY2d 34). Thus, all of plaintiff’s and Kerr’s claims against defendant Village should have been dismissed.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, defendant Village of Massena’s motion for summary judgment dismissing the complaint and cross claims against it granted, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 [1]
 

 . Neither plaintiff nor Kerr had any independent recollection of the events leading up to the accident.
 

 [2]
 

 . In neither
 
 Stanton v State of New York
 
 (26 NY2d 990,
 
 supra)
 
 nor
 
 Simmen v State of New York
 
 (55 NY2d 924,
 
 supra)
 
 was the Court called upon to define the precise contours of the duty of care established in Vehicle and Traffic Law § 1104 (e), since in both cases we concluded as a matter of law that the plaintiffs proof failed under even the less demanding "negligence” standard.
 

 [3]
 

 . The characterization of the conduct McGown had observed is significant because the Village’s own policy specifically provides that "[a] traffic infraction alone does not justify the risks of a high-speed pursuit.” A violation of this policy, if in fact it occurred, would be an important, although not dispositive, factor in determining whether McGown had acted recklessly
 
 (cf., Patella v State of New York,
 
 141 AD2d 999,1000,
 
 supra).