[870 NYS2d 587]

Marc A. Ayers, Respondent, v James E. O'Brien et al., Appellants.

Third Department, December 31, 2008

## APPEARANCES OF COUNSEL

*Mitchell, Goris & Stokes, L.L.C.*, Cazenovia (*Brendan J. Reagan* of counsel), for appellants.

*Cellino & Barnes, P.C.*, Amherst (*Denis J. Bastible* of counsel), for respondent.

## OPINION OF THE COURT

CARPINELLO, J.

Plaintiff is a Broome County Deputy Sheriff. While on duty one evening, he was traveling northbound on a two-lane road when he observed a southbound vehicle speeding. With the intent of making a U-turn to pursue the speeder, plaintiff pulled over to the right shoulder and activated his emergency lights. He then looked into his side view mirror and observed a northbound vehicle being driven by defendant Karin A. O'Brien. He further observed that this vehicle was decelerating. According to plaintiff, upon looking over his left shoulder and detecting no traffic, he "assumed" that O'Brien had completely stopped and thus proceeded to initiate the U-turn.[1] He was immediately struck by her vehicle.

O'Brien's version is not markedly different. According to her, she observed plaintiff's patrol car stopped on the side of the road with its emergency lights activated. Assuming that plaintiff had pulled over another vehicle, she slowed up. According to her, as soon as plaintiff pulled out in front of her, she hit her brakes, to no avail. It is undisputed that O'Brien was not speeding and was not issued any tickets.

Following the accident, plaintiff collected workers' compensation benefits for injuries to his neck and shoulder. After missing nine months of work, he resumed full duties. He then commenced this action against O'Brien and her husband (as owner of the vehicle she was driving) alleging that O'Brien's negligence caused the accident and his ensuing injuries. Defendants did not countersue for damages. They did, however, assert an affirmative defense alleging that plaintiff's own culpable conduct caused or contributed to his damages such that any damage award must be proportionately diminished. Plaintiff moved to dismiss this defense pursuant to Vehicle and Traffic Law §§ 101, 114-b and 1104. Specifically, plaintiff claimed that, because he

---

1. Plaintiff admitted that he did not actually see O'Brien's vehicle stop.

was engaged in the emergency operation of an authorized vehicle at the time of the accident, his own negligence may not be considered by the jury. Rather, according to plaintiff, the only way for any liability to be assessed against him for contributing to the accident, or to diminish his own damages, is through proof that he acted with a "reckless disregard for the safety of others." Supreme Court agreed and granted plaintiff's motion to dismiss this affirmative defense (19 Misc 3d 449 [2008]). Defendants appeal.[2]

The novel issue before this Court is whether the operator of an emergency vehicle may invoke the reckless disregard standard outlined under Vehicle and Traffic Law § 1104 (e) in seeking to hold a bystander liable for such operator's own injuries. Vehicle and Traffic Law § 1104 grants operators of authorized emergency vehicles a qualified privilege to disregard certain traffic laws when they are involved in an emergency operation (see Szczerbiak v Pilat, 90 NY2d 553, 556 [1997]; Saarinen v Kerr, 84 NY2d 494, 497 [1994]). Vehicle and Traffic Law § 1104 (e) specifically "precludes the imposition of liability for otherwise privileged conduct except where the conduct rises to the level of recklessness" (Saarinen v Kerr, 84 NY2d at 497). Defendants argue that, while Vehicle and Traffic Law § 1104 (e) is indeed a "shield" that protects an operator of an emergency vehicle against civil liability for injuries to others, it cannot be used as a "sword" by such operator to avoid comparative negligence when seeking damages in a civil action for his or her own injuries. We agree.

We begin by agreeing with Supreme Court that the applicability of Vehicle and Traffic Law § 1104 (e) is not contingent on the litigation status of an emergency operator (i.e., whether such operator is a plaintiff or a defendant).[3] We disagree, however, with the court's finding that the statute is contingent on "status at the time of the accident" (i.e., whether any party to the litigation is the operator of an emergency vehicle). In our view, the proper focus is the nature of the claim being asserted.

At issue is a bystander's civil liability to the operator of an emergency vehicle and not the civil liability of an emergency

---

**2.** Plaintiff also successfully obtained a declaration from Supreme Court that his conduct that day did not constitute a "reckless disregard of the safety of others." The propriety of this declaration is not before us and, in any event, is irrelevant based upon our determination.

**3.** By way of example, if defendants were countersuing for damages to O'Brien as a result of this accident, plaintiff would clearly be entitled to the protections afforded under the statute in his defense of such claim.

operator or municipality to an injured party. In our view, only the latter scenario is envisioned under the plain language of the statute. In other words, plaintiff is suing in his personal capacity as opposed to being sued in his professional capacity. Under these circumstances, we find that plaintiff does not need, nor is he entitled to, the protections afforded under Vehicle and Traffic Law § 1104 (e).

Although the Court of Appeals has never squarely addressed the question before us, it has had the opportunity to interpret Vehicle and Traffic Law § 1104 (e).[4] In so doing, the Court has made clear "that a police officer's conduct in pursuing a suspected lawbreaker *may not form the basis of civil liability to an injured bystander* unless the officer acted in reckless disregard for the safety of others" (*Saarinen v Kerr*, 84 NY2d at 501 [emphasis added]). We find this statement instructive to the instant dispute in that plaintiff is not himself an "injured bystander" and O'Brien herself is not seeking to hold him—or his municipal employer—civilly liable as a result of this accident (*see Campbell v City of Elmira*, 84 NY2d 505, 512 [1994] ["the more rigorous standard *before allowing for municipal liability* arising out of emergency circumstances accommodates the realities of the dangerous conditions encountered by officers in performing their municipal duties with necessary dispatch and dispensation from ordinary care" (emphasis added)]).

Moreover, according to the Court of Appeals, the Legislature enacted Vehicle and Traffic Law § 1104 in recognition of the "special needs" of operators of emergency vehicles, namely, "respond[ing] quickly to preserve life and property and to enforce the criminal laws" (*Saarinen v Kerr*, 84 NY2d at 497). In our view, declining to apply the protections of the statute to an operator's own claim for damages against a bystander and instead deciding such claim under ordinary comparative negligence principles does not hinder this stated purpose. Moreover, and more importantly, applying the statute to an operator's own claim for damages could result in potential financial windfalls to negligent operators of emergency vehicles and hold partially negligent bystanders responsible in a greater amount

---

4. Although the plaintiff in *Criscione v City of New York* (97 NY2d 152 [2001]) was a police officer, he was seeking to impose liability for his injuries against a coworker, his municipal employer and a third party bystander. That bystander, however, was found not liable by a jury and, thus, the Court of Appeals had no occasion to consider the correct standard to be applied as between these two particular parties with respect to that plaintiff's damages.

than otherwise permitted. Here, by way of example, while it would not be outside the realm of possibility for a jury to completely absolve O'Brien of any liability for this accident, a jury also could assign her a minuscule percentage of fault. If plaintiff's negligence is barred from consideration under Vehicle and Traffic Law § 1104 (e), this would result in an unwarranted financial windfall to him and an unjustifiable payment of damages by O'Brien. Fairness and logic dictate that this would be an unfair and unintended result of the statute.

Next, we are compelled to point out that our attempts to discern the legislative intent behind the reckless disregard standard of Vehicle and Traffic Law § 1104 in an effort to resolve the precise dispute have been futile. This provision was originally enacted in 1957 as part of an extensive reform of the Vehicle and Traffic Law (*see* L 1957, ch 698, § 4; *see also* Rep of NY St Joint Legis Comm on Motor Veh Problems, 1954 NY Legis Doc No. 36) and the language itself was taken verbatim from the "Uniform Rules of the Road" provisions of the Uniform Vehicle Code sponsored by the National Committee on Uniform Traffic Laws and Ordinances. State legislative documents and memoranda drafted throughout the 1950s concerning this legislative overhaul make clear that its stated goal was to adopt a uniform standard of traffic safety. None of these materials contains any specific commentary on the specific issue of civil liability and/or the reckless disregard standard itself. Attempts to discern the rationale behind the Committee's decision to include this language in the Uniform Vehicle Code were also fruitless in that statements akin to legislative memoranda seemingly do not exist or were not obtainable.

Finally, while mindful that both the Fourth Department and Second Department have taken a contrary position on this issue (*see McGloin v Golbi*, 49 AD3d 610 [2008]; *Sierk v Frazon*, 32 AD3d 1153 [2006]), we decline to follow them.

CARDONA, P.J., LAHTINEN, KANE and MALONE JR., JJ., concur.

Ordered that the order is modified, on the law, with costs to defendants, by reversing so much thereof as granted plaintiff's motion to dismiss defendants' first affirmative defense; said motion denied; and, as so modified, affirmed.