OPINION OF THE COURT
Norman I. Siegel, J.
This case comes before the court on two motions. Claimants have moved for partial summary judgment in favor of claimant on the issues of liability and serious injury. Defendant has cross-moved for summary judgment dismissing the case. The claim arises out of a motor vehicle accident which occurred on May 22, 2006, shortly after 5:00 p.m. It is alleged that the road conditions were clear and bare. At the time, claimant Julie L. Rusho was a passenger in a vehicle owned and operated by her husband, claimant Wayne K. Rusho.* The Rusho vehicle was traveling southbound on Genesee Street in Utica, New York. According to claimant’s moving papers, the roadway was two lanes in each direction at the area of the crash site and claimant’s vehicle was in the southbound “passing” lane.
Claimant alleges that defendant’s vehicle was being operated by state Parole Officer Clifford Cuda, and said vehicle was traveling northbound on Genesee Street when the defendant’s vehicle, without the use of a turning signal, the sounding of a horn, or any other warning lights or sirens, turned left in front of the claimant’s vehicle, entered the southbound passing lane and impacted the claimant’s vehicle, causing claimant to sustain personal injury.
Claimant’s position is that defendant’s driver was clearly negligent in turning his unmarked Ford vehicle, lacking in any police markings, sirens or lighting, into the path of an oncoming vehicle without proper warning.
It is the contention of claimant that the defendant is not entitled to the “reckless” standard afforded to certain police and emergency vehicles under Vehicle and Traffic Law § 1104, as this was not an emergency. Claimant argues further that even if the reckless standard were to be applicable, defendant’s driver’s behavior was reckless.
*754 Claimant argues that Parole Officer Cuda and his passenger, Parole Officer Fox, were on an investigative mission to locate a parole absconder and that this did not constitute an “emergency” within the meaning of Vehicle and Traffic Law § 1104, even though Officer Cuda had seen a vehicle that appeared to match the vehicle of the absconder and was in the process of turning to initiate pursuit.
Lastly, claimant provides certified copies of hospital records and other medical reports, indicating that claimant sustained a fractured sternum, and thus meets the “serious injury” threshold necessary to maintain this action. Defendant does not dispute this point and the court finds, in the absence of opposition, and based upon the documentary evidence, that claimant has sustained a serious injury (Williams v Lucianatelli, 259 AD2d 1003 [4th Dept 1999]).
Defendant cross-moves for summary judgment and does not dispute the basic facts as alleged by claimant. However, defendant argues that Officer Cuda was pursuing a violent felony parole absconder in a state-owned parole vehicle at the time of the incident and that said vehicle was a “police vehicle” within the meaning of applicable law, thus exempting defendant from the requirement of sounding sirens or flashing red lights to qualify for the heightened standard of Vehicle and Traffic Law § 1104, and that it was an “authorized emergency vehicle” within the meaning of the statute.
The court turns first to the issue of whether the defendant’s vehicle is one which is entitled to the heightened standard of Vehicle and Traffic Law § 1104. It should be noted that claimant does not oppose the defendant’s motion on this point, but rather argues in opposition that the defendant’s vehicle was not performing an “emergency operation” at the time of the accident.
The court is in accord with defendant’s position that the vehicle falls within the ambit of Vehicle and Traffic Law § 1104. The section provides, in relevant part, that the “driver of an authorized emergency vehicle, when involved in an emergency operation” may “[disregard regulations governing directions of movement or turning in specified directions” (Vehicle and Traffic Law § 1104 [a], [b] [4]). The section further provides that specified audible signals and warning lights are not required “for an authorized emergency vehicle operated as a police vehicle” (Vehicle and Traffic Law § 1104 [c]). Lastly, the statute provides that these provisions “shall not relieve the driver of an *755 authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.” (Vehicle and Traffic Law § 1104 [e].)
Vehicle and Traffic Law § 101 provides that a police vehicle is an “[ajuthorized emergency vehicle.” Vehicle and Traffic Law § 132-a defines a “police vehicle” as a “vehicle owned by the state . . . and operated by the . . . law enforcement agency of such governmental unit.” A vehicle used by a state parole officer qualifies as such a “police vehicle” (Daniels v State of New York, UID No. 2002-001-501, claim No. 99062, Apr. 16, 2002, Read, EJ.). Thus, the vehicle operated by Parole Officer Cuda, while in the course of his duties, qualifies as an “authorized emergency vehicle” within the meaning of Vehicle and Traffic Law § 1104 and is entitled to the heightened reckless standard, provided that the vehicle was “involved in an emergency operation” (the parole officers qualify as police officers in the performance of their investigation and pursuit of the parole absconder, pursuant to Vehicle and Traffic Law § 132).
Claimant asserts that the vehicle was not involved in an emergency operation, relying upon the defendant’s internal accident reports and the deposition testimony of the parole officers in the vehicle at the time of the accident. Claimant cites testimony that the officers were on a fact-finding mission to determine if the parole absconder was at a nearby motel and that the mission was investigatory. Claimant emphasizes that the defendant’s driver saw the suspect vehicle, but was not positive in his identification of the driver of that vehicle before commencing pursuit.
Claimant also argues that the accident reports prepared by the officers do not refer to an “emergency” with regard to the accident. Claimant relies heavily upon a statement at deposition by Parole Officer Fox that “there was no emergency” (exhibit I at 28). But this quotation is taken out of context, as the question asked of Fox related to places on the incident report that refer to any emergency, to which Fox made the aforementioned response — that is, that there was no emergency category on the form.
In any event, even if claimant was correct in the conclusion that the officers themselves did not consider the pursuit to be an “emergency operation,” their conclusions are not determinative. Vehicle and Traffic Law § 114-b clearly defines “emergency operation” as:
*756 “[t]he operation, or parking, of an authorized emergency vehicle, when such vehicle is engaged in transporting a sick or injured person, transporting prisoners, delivering blood or blood products in a situation involving an imminent health risk, pursuing an actual or suspected violator of the law, or responding to, or working or assisting at the scene of an accident, disaster, police call, alarm of fire, actual or potential release of hazardous materials or other emergency. Emergency operation shall not include returning from such service.” (Emphasis added.)
As both parties to this claim have noted, the underlying facts are not in dispute. It is not disputed that Parole Officer Cuda was pursuing a parole absconder and that he was attempting to cross the southbound lanes in order to turn into a parking lot to reverse direction and pursue the vehicle matching the description of the parole absconder’s vehicle when the collision occurred.
The issue at present is whether the defendant’s vehicle was involved in an “emergency operation” at the time of the accident and thus entitled to the heightened reckless standard. The conclusion to be drawn, relying upon the statutory definition provided by Vehicle and Traffic Law § 114-b, is that defendant’s vehicle and driver were involved in an emergency operation and cannot be held liable for simple negligence. This position is bolstered by relevant case law. In Daniels v State of New York (UID No. 2002-001-501, claim No. 99062, Apr. 16, 2002, Read, P.J.), the driver of defendant’s vehicle, a parole officer involved in the attempted apprehension of a parole absconder, was a participant in a planned operation to apprehend the absconder. The role of the defendant’s driver was to move defendant’s vehicle into a position where it could block the egress of the cab containing the absconder. In that case, the claimant took the position that this was a planned operation, the taxicab was at a standstill, there was no pursuit, and this was not an emergency. The court noted that claimant
“essentially asks the Court to read the word ‘pursuing’ in section 114-b as limited to those situations where the driver of an authorized emergency vehicle is ‘pursuing’ in the particular sense of ‘chasing’; i.e., going swiftly after another vehicle in which an actual or suspected criminal is, in fact, fleeing” (Daniels v State of New York, UID No. 2002-001- *757 501, claim No. 99062, Apr. 16, 2002, Read, P.J.).
The court went on to hold that
“this Court sees no reason to qualify or narrow the meaning of the word ‘pursuing’ as used in Vehicle and Traffic Law § 114-b. It would hardly promote the legislative purpose in forming section 1104 or public safety to deem this provision’s exemption from ordinary negligence inapplicable to Contino [the parole officer operating defendant’s vehicle], whose method of pursuit was, after all, aimed at short-circuiting a potentially more dangerous chase.” (Id.)
The case here is far more compelling, where it is undisputed that Parole Officers Cuda and Fox were “pursuing” a suspected parole absconder at the time of the collision. Even in Church v City of New York (268 AD2d 382 [1st Dept 2000]), where a civilian driver was operating a police van, transporting prisoners, and was inattentive and “rushing” due to the lack of air conditioning in the hot van, this nevertheless qualified as emergency operation in accordance with Vehicle and Traffic Law § 1104 (a) and § 114-b.
It is this court’s determination that defendant’s vehicle was an authorized emergency vehicle, specifically a police vehicle, involved in an emergency operation at the time of the collision, and thus is not liable for ordinary negligence. Pursuant to Vehicle and Traffic Law § 1104 (e), the driver of such vehicle can only be held liable under the reckless standard, that is, liable for “the consequences of his reckless disregard for the safety of others.”
The testimony of the defendant’s driver was that he turned into the oncoming lane in order to enter a driveway at the far side of the lanes of traffic, that he looked before turning, that he applied brakes before turning, and that he was going about 20 miles per hour at the time of the turn. He did not recall whether he used his turn signal and acknowledges that he did not see claimant’s vehicle until he had already entered claimant’s lane of traffic. He acknowledges he did not sound his horn. Claimant contends that the officer did not use his turn signal, and the court accepts that contention as true.
On these undisputed facts, the issue is whether such conduct rises to the level of reckless disregard for the safety of others. This court concludes that it does not.
Reckless disregard has been characterized as an exacting standard requiring a deliberate decision to ignore a likely harm. A *758 person acts with reckless disregard for the safety of others when he consciously or intentionally does an act of unreasonable character in disregard of a known or obvious risk so great as to make it highly probable that harm would follow and the act is done with conscious indifference to its outcome. (Soto v State of New York, 21 Misc 3d 1107[A], 2008 NY Slip Op 52003[U] [2008, Schweitzer, J.], citing Saarinen v Kerr, 84 NY2d 494 [1994].)
The Court of Appeals, in discussing why Vehicle and Traffic Law § 1104 imposes the reckless standard, rather than merely a negligence standard, noted that the latter standard would lead to judicial “second-guessing” of the many split-second decisions that are made in the field under highly pressured conditions (iSaarinen at 502). Further, the possibility of incurring civil liability for what amounts to a mere failure of judgment could deter emergency personnel from acting decisively and taking calculated risks in order to save life or property or to apprehend miscreants. The “reckless disregard” test, which requires a showing of more than a momentary judgment lapse, is better suited to the legislative goal of encouraging emergency personnel to act swiftly and resolutely while at the same time protecting the public’s safety to the extent practicable. (Saarinen v Kerr, 84 NY2d 494, 502 [1994].)
The court is satisfied that the failure, in this pursuit, to use the turn signal and the “judgment lapse of looking and failing to see does not . . . rise to the level of ‘reckless disregard’ or conscious indifference required of the driver of an emergency vehicle in order for liability to attach” (Klein v State of New York, UID No. 2003-029-308, claim No. 102851, Aug. 19, 2003, Mignano, J.).
In light of all of the foregoing, the claimant’s motion for summary judgment is denied and defendant’s cross motion for summary judgment is granted. The claim is dismissed on the grounds that defendant is entitled to the heightened standard of Vehicle and Traffic Law § 1104 and defendant’s driver’s conduct, based upon the undisputed facts, does not rise to the level of a reckless disregard for the safety of others.

 While both Julie L. Rusho and Wayne K. Rusho are denominated as claimants, the claim only asserts a cause of action on behalf of claimant Julie L. Rusho. Therefore, while this decision is determinative of the rights of both claimants, the decision henceforth refers to “claimant” in the singular.