■ MELODEE E. JONES, Appellant, v ALBANY COUNTY SHERIFF'S DEPARTMENT et al., Respondents. [999 NYS2d 260]—

Clark, J. Appeal from an order of the Supreme Court (O'Connor, J.), entered November 12, 2013 in Albany County,

which, among other things, granted defendants' motion for summary judgment dismissing the complaint.

On August 24, 2010, plaintiff was injured when the car she was driving on Central Avenue in the Town of Colonie, Albany County collided into the rear of an unmarked Chevy Suburban SUV driven by defendant John J. Curry, an inspector with defendant Albany County Sheriff's Department. Curry was driving east on Central Avenue transporting a young woman to the police station for assistance when he observed a Town of Colonie police officer on the sidewalk along the right eastbound side of the road who appeared to be "having trouble with" a detained suspect. Unable to get over to the right side of the road due to traffic, Curry put his four-way flashers on and completed a U-turn intending to assist the officer. Curry proceeded westbound on Central Avenue for about 100 to 150 yards when his vehicle was struck in the rear by plaintiff's car. The accident occurred around 11:20 a.m. on a clear, dry day.

Plaintiff thereafter commenced this action, alleging that Curry's negligent operation of his vehicle had caused the accident, and that the Sheriff's Department and defendant County of Albany were vicariously liable for his actions. Following discovery, defendants moved for summary judgment dismissing the complaint and plaintiff cross-moved for partial summary judgment on liability. Supreme Court denied plaintiff's cross motion and granted defendants' motion, finding that, as a matter of law, Curry was entitled to qualified immunity under Vehicle and Traffic Law § 1104 in that he was engaged in the emergency operation of a police vehicle and had not acted recklessly. Plaintiff appeals.

We affirm. Plaintiff primarily contends that Curry was negligent in making a U-turn in an unmarked vehicle without using a siren, emergency lights or a left turn signal, and was not engaged in an emergency operation of a police vehicle in that he was merely providing assistance to a police officer who did not need backup. In any event, plaintiff argues that Curry acted recklessly. "Vehicle and Traffic Law § 1104 (a) exempts the drivers of authorized emergency vehicles from the requirements of certain traffic laws when they are 'involved in an emergency operation' " (*Muniz v City of Schenectady*, 38 AD3d 989, 990 [2007], quoting Vehicle and Traffic Law § 1104 [a]; *see Gonyea v County of Saratoga*, 23 AD3d 790, 791 [2005]). This statutory qualified immunity "precludes the imposition of liability for otherwise privileged conduct except where the conduct rises to the level of recklessness" (*Saarinen v Kerr*, 84 NY2d 494, 497 [1994]; *see Green v State of New York*, 71 AD3d

1310, 1311 [2010]; *Flack v State of New York*, 57 AD3d 1199, 1199-1200 [2008]; *O'Banner v County of Sullivan*, 16 AD3d 950, 952 [2005]). By statute, *"[e]very . . . police vehicle"* is an "[a]uthorized emergency vehicle" within the meaning of Vehicle and Traffic Law § 1104 (a) and (b) (Vehicle and Traffic Law § 101 [emphasis added]), and the fact that Curry's police vehicle was unmarked does not compel a contrary conclusion (*see* Vehicle and Traffic Law § 101; *Dodds v Town of Hamburg*, 117 AD3d 1428, 1428-1429 [2014]; *Mouring v City of New York*, 112 AD3d 588, 589 [2013]), although it may be relevant to the inquiry into whether he acted recklessly (*see e.g. O'Connor v City of New York*, 280 AD2d 309, 309 [2001]).

We further find that Curry was exempt from certain traffic laws because he was engaged in an "emergency operation" (Vehicle and Traffic Law §§ 114-b, 1104 [a]; *see Criscione v City of New York*, 97 NY2d 152, 156-157 [2001]). Specifically, among other privileges, Curry was entitled to "[d]isregard regulations governing directions of movement or turning in specified directions" (Vehicle and Traffic Law § 1104 [b] [4]) and to "[s]top" his vehicle regardless of other traffic laws (Vehicle and Traffic Law § 1104 [b] [1]). Thus, while U-turns were not permitted at this location, Curry was permitted to stop or slow his vehicle in traffic and to make a U-turn, provided he did not act recklessly (*see Green v State of New York*, 71 AD3d at 1311; *see also Kabir v County of Monroe*, 16 NY3d 217, 223 [2011]; *Dodds v Town of Hamburg*, 117 AD3d at 1429). The evidence is undisputed that Curry, having acted to assist an officer who appeared to be having trouble with a detained suspect, was undertaking an "emergency operation." Specifically, Curry observed the officer holding the suspect's hands on top of his head and struggling as he frisked him, which Curry considered to be an emergency requiring his assistance. Curry's civilian passenger similarly testified that the officer appeared to be in a "verbal altercation" with the suspect involving "yelling" and that the officer did not appear to have the situation "under control." The passenger also explained that before making the U-turn, Curry remarked that the officer was "in distress" and that he was going to help him. Thus, Curry was "pursuing an actual or suspected violator of the law," and/or "assisting at the scene of an accident, . . . police call . . . or other emergency" (Vehicle and Traffic Law § 114-b; *see Flack v State of New York*, 57 AD3d at 1199-1200; *see also Saarinen v Kerr*, 84 NY2d at 501; *Dodds v Town of Hamburg*, 117 AD3d at 1429), and, as such, engaged in an "emergency operation" (Vehicle and Traffic Law § 1104 [a]). Notably also, because Curry was operating a police vehicle, he was exempt from the requirements applicable to other emer-

gency vehicles to utilize audible signals, sirens, lights, horns and the like when reasonably necessary (see Vehicle and Traffic Law § 1104 [a]; *Kabir v County of Monroe*, 16 NY3d at 223).

Consequently, Curry is not liable for ordinary negligence (see *Saarinen v Kerr*, 84 NY2d at 501; see *Szczerbiak v Pilat*, 90 NY2d 553, 557 [1997]), although he remained under "the duty to drive with due regard for the safety of all persons" and liable for any "reckless disregard for the safety of others" (Vehicle and Traffic Law § 1104 [e]). In order to demonstrate that Curry acted recklessly, plaintiff was required to show that he "has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and has done so with conscious indifference to the outcome" (*Saarinen v Kerr*, 84 NY2d at 501 [internal quotation marks and citation omitted]; see *Szczerbiak v Pilat*, 90 NY2d at 557; *Muniz v City of Schenectady*, 38 AD3d at 991).

Upon reviewing the record, we agree with Supreme Court's conclusion that defendants established, as a matter of law, that Curry did not act recklessly. While there are some discrepancies between the parties' accounts of the accident, we find that, even viewing the evidence most favorably to plaintiff, as is required, defendants established that Curry did not act with conscious indifference to the consequences of his actions, i.e., recklessly, and that plaintiff failed to demonstrate a triable, material issue of face on this dispositive issue (see *Green v State of New York*, 71 AD3d at 1311-1312; *Gonyea v County of Saratoga*, 23 AD3d at 791-792; see also *Williams v Fassinger*, 119 AD3d 1368, 1368-1369 [2014]; *Dodds v Town of Hamburg*, 117 AD3d at 1429-1430; compare *Mouring v City of New York*, 112 AD3d at 589-590; *Muniz v City of Schenectady*, 38 AD3d at 991; *O'Banner v County of Sullivan*, 16 AD3d at 952).

Curry testified that he slowed his vehicle, engaged his four-way flashers and moved to the far left lane and made a full stop, waiting for oncoming traffic to allow him in. Plaintiff then waved Curry on with a hand gesture, allowing him to complete a U-turn in front of her vehicle without incident. After driving westbound slowly with the slowing traffic for 100 to 150 yards, Curry was hit in the rear by plaintiff's car. Immediately prior to the accident, Curry observed plaintiff in his rear view mirror and he saw her looking over to the left at the police officer and suspect, as were other drivers. He explained that he did not activate his siren or flashing white and red lights located in the front grille and rear of his car because he did not want to alert the suspect that he was coming to the officer's assistance. Cur-

ry's passenger also testified that Curry slowed to a stop and waited, she heard a blinker or flasher sound, she observed plaintiff gesture for Curry to go, and Curry waved back to plaintiff and then successfully made a U-turn. The passenger recounted that Curry drove for about 15 seconds after completing the U-turn, slowing gradually, before his vehicle was struck from behind.

While plaintiff now suggests that Curry was in the process of making the U-turn when the collision occurred, her prior testimony contradicts this assertion. Specifically, plaintiff now asserts that she did not see Curry's flashers or realize that it was a police vehicle that had "cut right in front" of her car when Curry made the U-turn. Plaintiff also denies that Curry had slowed before making the U-turn or that she waved him to go. She does acknowledge, however, that she hit Curry's vehicle after it had completed the U-turn. Her prior testimony established that, as she observed Curry making a U-turn, she applied the brakes, slowing while he made the turn, and that he had successfully entered her lane and proceeded westbound in front of her. She thereafter stopped braking, continuing westbound, because she "thought traffic was going to flow smoothly." She admitted that, while Curry proceeded westbound in front of her, she looked to the right in an attempt to get into an adjacent westbound lane. This testimony demonstrated, as a matter of law, that Curry did not collide into plaintiff's car, and that plaintiff's car did not collide into the rear of Curry's vehicle during or immediately after his U-turn; rather, Curry had successfully navigated that U-turn with the collision occurring a brief time later when, for reasons that plaintiff was not able to explain, her car collided into the rear of Curry's (*compare Green v State of New York*, 71 AD3d at 1311). Even crediting plaintiff's account, the testimony is uncontroverted that Curry had completed the U-turn without incident, that plaintiff had sufficient time to brake and to avoid any collision with his vehicle, and that she had stopped braking and proceeded behind him before the accident. There is no evidence that Curry was traveling at an unsafe speed or stopped in an unreasonable manner. Thus, it cannot be concluded that Curry's U-turn was, in any way, reckless. Rather, as a matter of law, the proximate cause of the collision was plaintiff's conduct in following too closely, not Curry's speed, U-turn or the lack of flashing lights (*see Greenawalt v Village of Cambridge*, 67 AD3d 1158, 1160 [2009]). Consequently, Curry's actions were not of an "unreasonable character" or done "in disregard of a known or obvious risk that was so great as to make it highly probable" that harm would result, and there were no facts from which it could be

concluded that he acted "with conscious indifference to the outcome" (*Saarinen v Kerr*, 84 NY2d at 501 [internal quotation marks and citation omitted]; *see Dodds v Town of Hamburg*, 117 AD3d at 1429-1430; *Nikolov v Town of Cheektowaga*, 96 AD3d 1372, 1373-1374 [2012]; *Green v State of New York*, 71 AD3d at 1311-1312; *compare Flack v State of New York*, 57 AD3d at 1200-1201). Accordingly, defendants' motion for summary judgment dismissing the complaint was properly granted. As such, plaintiff's arguments with respect to her cross motion are academic.

McCarthy, J.P., Egan Jr. and Devine, JJ., concur. Ordered that the order is affirmed, without costs.