Quirk v State of New York (2025 NY Slip Op 51920(U))

[*1]

Quirk v State of New York

2025 NY Slip Op 51920(U)

Decided on November 19, 2025

Court Of Claims

Mejias-Glover, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 19, 2025
Court of Claims

Martin Quirk, Claimant,

against
The State of New York, Defendant.

Claim No. 134957

FOR CLAIMANT:
THE BONGIORNO LAW FIRM, PLLC
By: Keri Lynn Timlin, Esq.
FOR DEFENDANT: 
HON. LETITIA JAMES, NYS ATTORNEY GENERAL
By: John L. Belford, IV, Esq., AAG.

Linda K. Mejias-Glover, J.

Defendant, the State of New York (hereinafter, the "Defendant"), moves by Notice of Motion dated and filed on May 8, 2025, pursuant to CPLR 3212 seeking, inter alia, an order dismissing the claim. Claimant opposes the motion, and Defendant has submitted a reply thereto.
 RELEVANT PROCEDURAL BACKGROUND
On April 16, 2019, Claimant served a Notice of Intention to File a Claim (the "NOI") upon Defendant, alleging that on February 20, 2019, he was operating his motor vehicle on the eastbound roadway of Route 109 at or near its intersection with Bi County Blvd., County of Suffolk, State of New York, when a New York State Department of Transportation ("DOT"), snow plow truck struck the passenger side of his vehicle resulting in multiple bodily injuries.
On June 29, 2020, the Office of the Attorney General ("OAG") was served with the Claim, reiterating that Claimant was injured in a motor vehicle accident on February 20, 2019.
On August 7, 2020, Defendant filed a Verified Answer asserting several affirmative defenses including the TENTH, that "Defendant is entitled to the protections of Vehicle and Traffic Law § 1103(b), as the incident alleged in the Claim involved workers and/or vehicles that were actually engaged in work on a highway at the time of the incident."
Claimant's deposition was conducted on June 10, 2021. The depositions of Brian Moore an employee of the New York State Department of Transportation ("DOT"), and of Robert Patterson, Mr. Moore's DOT supervisor, were conducted on December 8, 2021, and June 14, 2023, respectively. Claimant filed the Note of Issue on April 15, 2025.

RELEVANT FACTS & POINTS OF COUNSEL
The following facts have been provided during the sworn deposition testimony and affidavit of Claimant: on February 20, 2019, at approximately 8:15 p.m., the Claimant was driving his vehicle on Route 109, between East Carmans Road and Bi County Blvd., County of Suffolk, returning home after visiting a friend at his new house. He testified that it was sleeting with light snow, that it was cold, and that visibility was very poor. He further testified that he was not under the influence of any drugs or alcohol impairing his ability to operate a motor vehicle and was familiar with this road.
As the Claimant traveled on Route 109 in the left eastbound lane, he observed a plow truck in the right lane 25 to 30 feet ahead of his vehicle for four to five minutes prior to the accident. Both vehicles were moving very slowly—approximately 20 miles per hour. He testified that while driving in the left lane, he observed the plow truck's headlights and taillights were illuminated but does not recall seeing a beacon light. He testified the plow was weaving between the right and left lanes. Exercising caution, he waited until the plow truck straightened out after approximately three lane changes. Still in the left lane, he accelerated to pass the plow. However, as he was overtaking the plow, it began to turn into his lane, striking the passenger side of his vehicle.
Claimant avers that during the entire period in which he observed the plow prior to the accident, the truck neither plowed snow nor deposited sand, salt, or any other substance on the road, nor did he observe any such substances in the area through which the snowplow had passed.
In support of its motion, Defendant's counsel relies on the deposition testimony of Brian Moore, a 27-year employee of DOT and a Highway Maintenance Worker 2, who testified that at the time of the accident he was operating a 2017 Mack truck, six wheel automatic, with a snowplow on the front and a "wing" on the right side, salting the eastbound road on Route 109, at the end of his "area". Moore stated that his assigned "area" extended along Hempstead Turnpike and Route 109, terminating at Carmans Road. His work zone ran from the intersection of Wantagh Avenue and Hempstead Turnpike to Carmans Road. He testified that his task was to salt these roads, turn around, and repeat the process, and he testified that he had already salted the entirety of his area before the accident occurred.
Mr. Moore testified that he did not know when his shift had begun that day, but asserted that when it snows, he works through a schedule of 16 hours on followed by 8 hours off. At the time the accident occurred, he was more than 13 hours into that shift. Mr. Moore testified that he had the truck's beacon and flashing lights activated and that there was a sign on the rear of the truck reading "Keep Back 200 Feet." He testified that he was not plowing at the time of the accident as he was actively engaged in pushing the button on the salt spreader.
While in the right lane on Route 109, Mr. Moore reached the end of his work zone, checked his mirrors, and saw a car approximately one and a half miles behind him. Mr. Moore testified that he signaled and moved into the left lane before executing a left turn onto Bi County Boulevard. He testified that after confirming after looking in his multiple mirrors that no vehicle [*2]was in the left lane, he shifted into that lane, began salting the left turn lane, and commenced the left turn. It was at that moment that the collision occurred, with the left side of the plow striking the right side of the Claimant's car.
Robert Patterson, DOT Highway Maintenance Supervisor and Mr. Moore's supervisor at the time of the accident, testified that he prepared the accident report after being advised by Mr. Moore of the accident. Mr. Patterson testified that, based on the information he received, Mr. Moore's inattentive behavior and operator error were among the contributing factors to the accident. Specifically, he opined that Moore should not have attempted a left turn in such close proximity to another vehicle.
In support of its motion for summary judgment, Defendant argues it is entitled to dismissal of the Claim pursuant to CPLR 3212 and Vehicle and Traffic Law ("VTL") § 1103 (b). Defendant contends that at the time of the February 20, 2019, accident, the DOT snowplow operator, Brian Moore, was salting his assigned route on Route 109 and thus was "actually engaged in work on a highway." Defendant cites to Mr. Moore's deposition testimony that his strobe and warning lights were activated and that he checked his multiple mirrors and signaled before attempting to move left to salt a turning lane. According to the State, these undisputed facts establish that Mr. Moore was actually engaged in highway maintenance work, which therefore triggers, the heightened "reckless disregard" standard of VTL § 1103 (b).
Assuming arguendo that Mr. Moore was momentarily inattentive and struck Claimant's vehicle, Defendant argues this would only constitute negligence, not reckless disregard. Defendant emphasizes that recklessness requires intentional conduct in disregard of a known risk and argues that Mr. Moore's careful use of signals and mirrors precludes such a finding. Defendant argues that Claimant has not raised a triable issue of fact, and therefore summary judgment dismissing the Claim is warranted.
In opposition to the motion for summary judgment, Claimant contends that there are triable issues of fact as to whether the heightened standard under VTL § 1103 (b) is applicable, and therefore, summary judgment must be denied. Claimant relies on his affidavit, in which he states that during the four to five minutes immediately preceding the collision, he observed the snowplow truck neither spreading salt nor sand, and he did not see any residue on the roadway indicative of recent spreading. This, he argues, suggests that the snowplow was no longer actively engaged in highway maintenance work at the time of the accident.
Claimant further cites Mr. Moore's deposition testimony that his assigned salting area ended at E. Carmans Rd., beyond which the accident occurred. Claimant references Qusaj v Sleepy Hollow and Perez v City of Yonkers, 223 AD3d 29 [2d Dept 2023] emphasizing how hazard vehicles merely travelling to and from a worksite are not actually engaged in work on a highway within the meaning of the VTL. Therefore, Claimant asserts that the ordinary negligence standard applies, and that under that standard, Mr. Moore violated VTL § 1160 (b) for making a left turn from the right lane, and VTL § 1128 (a) for an unsafe lane change.
Alternatively, Claimant argues that, should the Court apply the reckless disregard standard, the record raises triable issues of fact as to whether Mr. Moore acted recklessly. Claimant emphasizes that before the collision, Mr. Moore knew, or should have known, that a vehicle was traveling behind him in the left lane. Despite this knowledge, Claimant argues that Mr. Moore attempted to move left and begin a turn, therefore, striking the passenger side of his vehicle. Claimant contends that this maneuver was not a momentary lapse in judgment, but rather an intentional and unreasonable act in disregard of a known risk of harm. In Claimant's [*3]view, turning directly across an occupied lane without confirming that it was clear rises to the level of reckless disregard for his safety. Furthermore, Claimant emphasizes that Mr. Moore had been on duty for more than thirteen hours on the day of the accident, and that his weaving back and forth across lanes ahead of the collision suggested inattentiveness or fatigue. Claimant argues these factors support the finding that such conduct was not just negligent, but reckless.
Claimant concludes that, whether analyzed through ordinary negligence or the heightened reckless disregard standard, the record presents issues of fact regarding Mr. Moore's actions ahead of the collision and his qualifications at the time of the incident.
In reply, Defendant reiterates its argument that Mr. Moore was engaged in salting Route 109 at the time of the accident, and stresses that Claimant's self-serving assertion that the truck was not salting is contradicted by Mr. Moore's testimony and lacks evidentiary support. Defendant states that Claimant cannot argue that Mr. Moore was "finished" with his work merely because he had technically moved beyond the endpoint of his route, as he was still within the immediate vicinity of his work site and was still completing the task that he had been assigned to perform. Defendant argues that, at most, Claimant's allegations reflect negligence, such as the possible failure to see Claimant's vehicle, not the conscious disregard of a known risk required for recklessness.

LAW AND ANALYSIS
The moving party must make a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient admissible evidence to demonstrate the absence of any material issues of fact (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). The court must carefully read the motion papers in the light most favorable to the party opposing the motion (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]). If the moving party fails, the court must deny the motion. If the moving party succeeds, the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact (see id.; see also Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Bald, conclusory assertions or speculation and '"[a] shadowy semblance of an issue'" are insufficient to defeat a summary judgment motion (S.J. Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341 [1974] [citation omitted]). "A motion for summary judgment 'should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility'" (Ruiz v Griffin, 71 AD3d 1112, 1115 [2d Dept 2010], quoting Scott v Long Is. Power Auth., 294 AD2d 348 [2d Dept 2002]). Lastly, summary judgment is particularly uncommon in actions for negligence in which the inquiry is often fact-intensive (see Andre v Pomeroy, 35 NY2d 361, 364 [1974]).
VTL § 1103 (b) exempts from the rules of the road, "hazard vehicles while actually engaged in hazardous operation on or adjacent to a highway but shall apply to such persons and vehicles when traveling to or from such hazardous operation." The operator of such vehicle while engaged in work has the "duty to proceed at all times during all phases of such work with due regard for the safety of all persons" and is not protected "from the consequences of their reckless disregard for the safety of others."
A snowplow truck that is actually engaged in work on or adjacent to a highway is a hazard vehicle within the meaning of VTL §1103 (b) and as such is liable only for conduct that constitutes reckless disregard for the safety of all persons (Riley v County of Broome, 95 NY2d 455 [2000]). Although "the Appellate Division has consistently held that drivers are not actually [*4]engaged in work on a highway when they are merely traveling between work sites and not actively performing any protected task on the road itself" (Orellana v Town of Carmel, 42 NY3d 526, 530 [2024] [internal quotation marks omitted]; see Perez v City of Yonkers, 204 AD3d 711, 712 [2d Dept 2022]), "[t]he statute does not require that a vehicle be located in a designated 'work area' in order to receive the protection" (Riley, 95 NY2d at 468). As relevant here, a snowplow operator who "was working [their] 'run' or 'beat' at the time of the accident" may be entitled to the recklessness standard of care "even if the plow blades were raised at the time of the accident and no salting was occurring" (Plummer v Town of Greece, 213 AD3d 1236, 1237 [4th Dept 2023] [internal quotation marks omitted]."Reckless disregard, however, requires more than a momentary lapse in judgment" (Rockland Coaches, Inc. v Town of Clarkstown, 49 AD3d 705 [2d Dept 2008], quoting. Saarinen, 84 NY2d at 502).
With respect to the standard of care applicable in this matter, the Court finds that the Department of Transportation truck operated by Mr. Moore was assigned the duty of spreading salt at the time of the accident. Although Mr. Moore had traveled slightly beyond his designated endpoint, the record reflects that this was done to avoid police activity and to position the vehicle so that he could turn and salt the opposite side of the roadway. The Court finds such conduct reasonable and consistent with the completion of the assigned task. Accordingly, the Court concludes that at the time of the accident, Defendant's vehicle was "actually engaged in work on a highway" within the meaning of Vehicle and Traffic Law § 1103 (b), and that the reckless disregard standard applies.
Having determined that Defendant has established, prima facie, that Mr. Moore was engaged in work on a highway at the time of the accident and that the reckless disregard standard governs, the Court turns to whether Defendant has further demonstrated prima facie that Mr. Moore's conduct did not rise to the level of reckless disregard.
VTL § 1103 (b) exempts all motor vehicles and other equipment from the rules of the road when they are "actually engaged in work on a highway . . ." The standard of care applicable to vehicles engaged in work on a highway is the same "reckless disregard" standard applicable to vehicles engaged in emergency operations pursuant to VTL § 1104 (b) (Riley, 95 NY2d at 466). The reckless disregard standard is set forth in Saarinen v Kerr, 84 NY2d 494, 501 [1994], which holds as follows:
[The reckless disregard] standard demands more than a showing of a lack of 'due care under the circumstances' - - the showing typically associated with ordinary negligence claims. It requires evidence that the 'actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow' and has done so with conscious indifference to the outcome (Prosser and Keeton, Torts § 34, at 213 [5th ed]; see Restatement [Second] of Torts § 500).
VTL § 1128 (a) requires vehicles to remain in their lane until it is safe to change lanes. VTL §§ 1160 (b) and (c) of such law requires vehicles intending to turn left to approach the intersection from the left-most lane in their direction.
The deposition testimony established that there was an ongoing salting operation proceeding at the time of the accident. Mr. Moore's truck's strobe and flashing lights were activated. Claimant observed the snowplow prior to the accident and Mr. Moore observed Claimant traveling behind him prior to the accident. However, Mr. Moore did not observe [*5]Claimant's vehicle in the lane of traffic next to his truck although he checked his mirrors and looked out the side window prior to turning, thereby, making a safe lane change prior to making a left turn at the intersection. The Court finds that Mr. Moore followed proper protocol for changing lanes and salting/sanding a turning lane, even if the Court were to consider his actions a "momentary lapse in judgment", (Rockland Coaches, Inc., 49 AD3d at 707), and that Mr. Moore has not "intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and has done so with conscious indifference to the outcome"(Saarinen, 84 NY2d at 501[citations and internal quotation marks omitted]). Claimant has failed to establish that Mr. Moore acted in reckless disregard of the safety of others while engaged in work on the roadway.
Claimant has not presented evidence sufficient to raise a triable issue of fact that Mr. Moore acted with conscious indifference to a known, grave risk. Accordingly, having met its prima facie burden, and in the absence of any evidentiary showing sufficient to rebut it, Defendant's motion for summary judgment is granted.
Accordingly, and for all the reasons set forth hereinabove, it is hereby
ORDERED, that Defendant's motion (M-102204) is GRANTED and Claim No. 134957 is DISMISSED; and it is further
ORDERED, that the Clerk close the file.
Dated: November 19, 2025
Hauppauge, New York
HON. LINDA K. MEJIAS-GLOVER,
Judge of the Court of Claims
Papers Read:
1. Notice of Motion dated May 8, 2025, Affirmation in Support, Exhibits Annexed
2. Affirmation in Opposition, Affidavit in Opposition, Exhibits Annexed
3. Affirmation in Reply