[878 NYS2d 412]

PAMELA TUTRANI et al., Respondents, v COUNTY OF SUFFOLK et al., Appellants, et al., Defendants.

Second Department, May 5, 2009

**APPEARANCES OF COUNSEL**

*Christine Malafi, County Attorney*, Hauppauge (*Christopher A. Jeffreys* of counsel), for appellants.

*Philip J. Rizzuto, P.C.*, Carle Place (*Kenneth R. Shapiro* of counsel), for respondents.

**OPINION OF THE COURT**

DICKERSON, J.

### The Accident

On the morning of March 25, 2003, the plaintiff Pamela Tutrani (hereinafter the plaintiff) was driving her vehicle during rush-hour traffic on the service road of the Long Island Expressway near exit 53, when her vehicle was struck in the rear by a vehicle driven by Darlene Maldonado. Seconds before this rear-end collision, a police vehicle operated by defen-

dant Suffolk County Police Officer Lee Weidl (hereinafter Officer Weidl) came to an abrupt stop in front of the plaintiff's vehicle. The plaintiff was able to stop her vehicle in time to avoid colliding with the police vehicle. At the time of the accident, Officer Weidl was responding to a radio dispatch concerning a disabled motorist on the service road near exit 53.

At trial, the plaintiff testified that immediately before the accident, Officer Weidl abruptly moved into her lane, "cutting her off" and causing her to "jam" on her brakes to avoid colliding with his vehicle. The plaintiff stated that Officer Weidl did not signal his intention to change lanes or activate his overhead lights.

## Officer Weidl's Testimony

Officer Weidl testified that he received a dispatch indicating that there was a disabled motorist on the service road near exit 53. He looked for the disabled vehicle as he drove on the service road. He was driving at approximately 40 miles per hour in the middle lane. He did not know what lane of traffic the vehicle was in, only that it was disabled. When asked if he knew that there was not a life-endangering situation involved, Officer Weidl responded that he only knew he was responding to a disabled motorist.

At some point, Officer Weidl observed the disabled vehicle on the shoulder of the road. The entire vehicle was on the shoulder of the roadway. Officer Weidl was still traveling at 40 miles per hour. When asked if he recognized, upon seeing the disabled vehicle, that it was not a life-or-death situation, Officer Weidl responded, "I recognized it to be a disabled motorist." He observed that the disabled vehicle had a flat tire. However, he could not recall when he made that observation. He further testified that, when he saw the disabled motorist, there was nothing about her that made him believe that she was in distress.

The disabled motorist was 100 feet in front of Officer Weidl. He stated that, to arrive at the location of the disabled vehicle, without passing it, he had to move from where he was in the middle lane, through the right lane, and to the shoulder where the disabled vehicle was located, within the distance of 100 feet. Officer Weidl testified that he thought it was safe to cross the Long Island Expressway service road at the relevant location within a 100-foot distance in 1½ seconds' time in rush-hour traffic.

When asked if it was an option to pass the motorist, Officer Weidl responded that it was his intention to respond to the disabled motorist. He subsequently testified that he "was going to respond to it in a safe manner." When pressed on whether anything prevented him from passing the disabled vehicle, changing lanes gradually, and coming back to the motorist, Officer Weidl testified that he wanted to respond to assist the disabled motorist. However, he then acknowledged that he could have passed the disabled vehicle and proceeded to the next exit. He acknowledged that there were options available to him that would not have required him to cross from the middle lane to the shoulder within the space of 100 feet but would still enable him to reach the disabled motorist.

Officer Weidl testified that he did not immediately activate his vehicle's emergency lights when he saw the disabled motorist. He testified that his vehicle's emergency lights were not required until he could not "get over from the traffic." He did activate his vehicle's emergency lights when he was attempting to move from the middle to the right lane and was unable to do so. Therefore, he activated his lights to enable him to change lanes.

Officer Weidl acknowledged that, from the time when he arrived at the scene where the accident would ultimately occur, when he was traveling at 40 miles per hour, he slowed to approximately two miles per hour within two seconds. On cross-examination, he testified that he did not slow abruptly. However, on redirect, he testified that it was not his testimony that going from 40 miles per hour to one or two miles per hour within two seconds did not constitute stopping abruptly. He further acknowledged that slowing his vehicle from 40 miles per hour to two miles per hour could be unsafe to the vehicle behind his.

Officer Weidl also acknowledged that he saw, in his rearview mirror, the plaintiff's minivan close to his vehicle prior to the accident. He subsequently testified that he first became aware of the plaintiff's vehicle after he was already moving slowly and he was attempting to move from the middle lane to the right lane.

Officer Weidl testified that he was absolutely aware that, by slowing his vehicle to one or two miles per hour, his actions would affect travel behind his vehicle. Officer Weidl further testified that he did not feel he was doing anything unsafe in slowing his vehicle from 40 miles per hour to two miles per hour in two seconds, knowing that the plaintiff's minivan was close behind him.

Officer Weidl did not recall whether he activated a turn signal to indicate that he was changing lanes. He acknowledged that, not having activated his vehicle's emergency lights, the only warning he gave other motorists to indicate that he was slowing were his vehicle's brake lights and the fact that he was braking. He testified that there is a risk involved when bringing a vehicle to a stop or slowing it to two miles per hour where traffic is flowing at 40 miles per hour, and that he was aware of that risk when he took the action at issue here. He testified that he thought his actions were reasonable.

### Jury Charge and Verdict

There was no dispute that the plaintiff was not negligent in the happening of the accident, and the jury was so instructed. Following deliberations, the jury found that Officer Weidl had acted in "reckless disregard" for the safety of others and, accordingly, determined that Officer Weidl was 50% at fault in the happening of the accident. The jury further found that Darlene Maldonado was negligent and apportioned 50% of the fault to her.

### The Original Appeal to this Court

The defendants County of Suffolk, Suffolk County Police Department, and Officer Weidl (hereinafter collectively the appellants) appealed from the interlocutory judgment. This Court, in a decision and order dated July 17, 2007, inter alia, reversed the interlocutory judgment insofar as appealed from, granted the appellants' application pursuant to CPLR 4401 for judgment as a matter of law, and dismissed the complaint insofar as asserted against the appellants (*see Tutrani v County of Suffolk*, 42 AD3d 496 [2007], *revd* 10 NY3d 906 [2008]). The determination dismissing the complaint insofar as asserted against the appellants was based solely upon this Court's finding that Officer Weidl was not a proximate cause of the collision between the plaintiff's vehicle and Darlene Maldonado's vehicle (*id.* at 497). This Court based its conclusion on "the evidence that the plaintiff was able to come to a complete stop without hitting Officer Weidl's vehicle" (*id.*). In light of its determination, this Court found that the appellants' remaining contentions were academic.

### The Court of Appeals' Reversal

In a decision dated June 12, 2008, the Court of Appeals reversed this Court's decision and order dated July 17, 2007 (*see*

*Tutrani v County of Suffolk*, 10 NY3d 906 [2008]). The Court of Appeals determined that, "[o]n this record, the jury could have rationally found that the officer's conduct was a substantial cause of the collision between plaintiff and Maldonado even though there was no contact between plaintiff's vehicle and the Weidl vehicle" (*id*. at 907, citing *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]). Under the circumstances presented, the Court determined that Officer Weidl's actions " ' "set into motion an eminently foreseeable chain of events that resulted in [the] collision" ' between the vehicles driven by plaintiff and Maldonado" (*Tutrani v County of Suffolk*, 10 NY3d at 907, quoting *Sheffer v Critoph*, 13 AD3d 1185, 1187 [2004]). In light of the fact that the accident occurred mere seconds after Officer Weidl's abrupt deceleration, the Court concluded that Officer Weidl's " 'actions were not so "remote in time" from plaintiff's injury as to preclude recovery as a matter of law' " (*Tutrani v County of Suffolk*, 10 NY3d at 907-908, quoting *McMorrow v Trimper*, 149 AD2d 971, 972 [1989], *affd* 74 NY2d 830 [1989]), and that, under the circumstances, it was irrelevant that the plaintiff managed to stop her vehicle and avoid striking Officer Weidl's vehicle (*Tutrani v County of Suffolk*, 10 NY3d at 908). The Court of Appeals also stated, "[c]learly, Officer Weidl's actions created a foreseeable danger that vehicles would have to brake aggressively in an effort to avoid the lane obstruction created by his vehicle, thereby increasing the risk of rear-end collisions" (*id*.).

The Court of Appeals remitted the matter to this Court "for consideration of issues raised but not determined on the appeal to" this Court (*id*. at 907).

### Remittitur

■ "Upon remittitur, a court is without power to do anything except to obey the mandate of the court making the remittitur" (*Matter of Davis*, 56 AD3d 553, 555 [2008]). Since the issue of whether the jury could reasonably have found that Officer Weidl's conduct constituted a proximate cause of the accident has been decided in the plaintiffs' favor, we turn to a consideration of the appellants' remaining contentions.

### Reckless Disregard—Legal Sufficiency of the Evidence

■ Contrary to the appellants' contention, the evidence was legally sufficient to support the jury verdict that Officer Weidl operated his police vehicle in reckless disregard for the safety of

others. "The manner in which a police officer operates his or her vehicle in responding to an emergency call may not form the basis for civil liability to an injured third party unless the officer acted in reckless disregard for the safety of others" (*Badalamenti v City of New York*, 30 AD3d 452, 452 [2006]; *see* Vehicle and Traffic Law § 1104 [e]; *Saarinen v Kerr*, 84 NY2d 494, 501 [1994]). "[T]his qualified privilege does not relieve the driver 'from the duty to drive with due regard for the safety of all persons, nor shall [it] protect the driver from the consequences of his [or her] reckless disregard for the safety of others' " (*Criscione v City of New York*, 97 NY2d 152, 156-157 [2001], quoting Vehicle and Traffic Law § 1104 [e]).

> "[P]arties may be found to have acted in violation of the statutory formulation when they consciously—and, thus, with general intentionality, not necessarily with intent to cause particular injury— disregard known serious risks of harm. The decision to ignore a grave risk, which is likely to result in harm to others, may satisfy the intentional aspect sufficient to impose liability" (*Campbell v City of Elmira*, 84 NY2d 505, 510-511 [1994]).

> " 'The "reckless disregard" standard requires proof that the officer intentionally committed an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow' (*Badalamenti v City of New* York, 30 AD3d at 453), ' "and has done so with conscious indifference to the outcome" (*Saarinen v Kerr*, 84 NY2d at 501)' " (*Meade v Chestnut*, 53 AD3d 645, 645-646 [2008]).

Moreover, "[i]t is well established that when the driver of an automobile approaches another automobile from the rear, he or she is bound to maintain a reasonably safe rate of speed and control over his or her vehicle, and to exercise reasonable care to avoid colliding with the other vehicle" (*Chepel v Meyers*, 306 AD2d 235, 236 [2003]; *see Gaeta v Carter*, 6 AD3d 576 [2004]). A rear-end collision with a stopped or stopping vehicle creates a prima facie case of negligence with respect to the operator of the rearmost vehicle, thereby requiring that operator to rebut the inference of negligence by providing a nonnegligent explanation for the collision (*see Ramirez v Konstanzer*, 61 AD3d 837 [2009]; *Jumandeo v Franks*, 56 AD3d 614 [2008]). "However, not every rear-end collision is the exclusive fault of the rear-

most driver. The frontmost driver also has the duty 'not to stop suddenly or slow down without proper signaling so as to avoid a collision' " (*Gaeta v Carter*, 6 AD3d 576, 576 [2004], quoting *Purcell v. Axelsen*, 286 AD2d 379, 380 [2001]; *see* Vehicle and Traffic Law § 1163).

In view of the evidence, set forth extensively above, that Officer Weidl came to a virtual stop extremely abruptly in front of the plaintiff's vehicle, in rush-hour traffic, proceeding at 40 miles per hour, without any warning and just seconds before the collision, it cannot be said that there was no rational process by which the jury could have found that Officer Weidl operated his vehicle in reckless disregard for the safety of others (*see Campbell v City of Elmira*, 84 NY2d 505 [1994]; *Lynch v City of New York*, 38 AD3d 721 [2007]), and that he was partially at fault for the accident (*see Chepel v Meyers*, 306 AD2d at 237; *Purcell v Axelsen*, 286 AD2d at 381).

### Jury Charge

The appellants claim that the trial court did not properly charge the jury with a reckless disregard standard of care. We find that the trial court properly charged the jury on the essential elements of the reckless disregard standard of care applicable to authorized emergency vehicles (*see* Vehicle and Traffic Law § 1104), and that the charge was consistent with the New York Pattern Jury Instructions governing vehicular accidents involving authorized emergency vehicles (*see* PJI 2:79A). Contrary to the appellants' contention, the trial court did not improperly "blur" the legal distinctions between the negligence standard of care and the reckless disregard standard applicable to Officer Weidl.

Further, it appears from the record before us that the jury properly followed the instructions. In addition, the record fails to reveal any confusion on the jury's part as to how to apply the legal concepts of negligence and reckless disregard to the facts of this case (*see generally Tucker v Elimelech*, 184 AD2d 636, 638 [1992]).

The appellants' remaining contention is in part unpreserved for appellate review and otherwise without merit.

Accordingly, the appeal from the order dated July 18, 2006 is dismissed, as no appeal lies as of right from an order that does not decide a motion made on notice, and we decline to grant leave to appeal (*see* CPLR 5701 [a] [2]). The interlocutory judgment is affirmed insofar as appealed from.

COVELLO, J.P., ANGIOLILLO and CARNI, JJ., concur.

Ordered that the appeal from the order dated July 18, 2006 is dismissed, as no appeal lies as of right from an order that does not decide a motion made on notice, and we decline to grant leave to appeal (*see* CPLR 5701 [a] [2]); and it is further,

Ordered that the interlocutory judgment is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the respondents.