Murray v State of New York (2025 NY Slip Op 51665(U))

[*1]

Murray v State of New York

2025 NY Slip Op 51665(U)

Decided on August 11, 2025

Court Of Claims

Mejias-Glover, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 11, 2025
Court of Claims

Julian A. Murray and NADINE S. BURKE, Claimants,

against
The State of New York,[FN1] Defendant.

Claim No. 133560

FOR CLAIMANTS:
SOBO & SOBO, LLP
By: Keliann M. Argy, Esq. 
FOR DEFENDANT: 
HON. LETITIA JAMES, NYS ATTORNEY GENERAL
By: Albert E. Masry, Esq., AAG.

Linda K. Mejias-Glover, J.

Defendant, the State of New York 
(hereinafter, the "Defendant"), moves by Notice of Motion dated and filed on April 24, 2025, pursuant to CPLR 3212 seeking, inter alia, an order dismissing the claim. Claimants oppose the motion, and Defendant has submitted a reply thereto.
 RELEVANT PROCEDURAL BACKGROUND
On November 29, 2017, Claimants served a Notice of Intention to File a Claim (the "NOI") upon Defendant, alleging that on August 31, 2017, at 2:09 p.m., Claimant, Mr. Murray ("Murray"), was operating his motor vehicle eastbound on Wakefield Avenue, in Yonkers, New York, through the intersection at Bronx River Road when New York State Trooper John Finaro [*2]collided with the front passenger side of Murray's vehicle. Ms. Burke ("Burke") was seated in the front passenger side of Murray's vehicle. 
On September 3, 2019, the Office of the Attorney General ("OAG") received the Claim, reiterating that Claimants were injured in a motor vehicle accident on August 31, 2017 (the "Claim").
On October 3, 2019, Defendant filed a Verified Answer and on February 3, 2025, Defendant filed an Amended Answer asserting the following affirmative defenses:
FIRST: The injuries or damages complained of were caused in whole or part by [C]laimant[s]' own culpable conduct.
SECOND: The answering Defendants invoke the protection of Vehicle and Traffic Law § 1104 and reserves all rights pursuant thereto.
All discovery and party depositions were completed prior to the filing of this motion. A Note of Issue has not been filed.

 RELEVANT FACTS & POINTS OF COUNSEL
Claimant Murray gave the following relevant testimony at his deposition taken on April 17, 2023: on August 31, 2017, he was operating a motor vehicle he owned at the intersection of Bronx River Road and Wakefield Avenue, in the Bronx, with Claimant Burke in the passenger seat at the time of the accident. He testified that there were no mechanical issues with the car, the weather was clear, and the road surface was dry. Claimant Murray testified that while traveling eastbound on Wakefield Avenue, he came down a hill, at a speed of 25 miles per hour, observed a green light, and—just after entering the central intersection—felt his vehicle collide with another vehicle. He testified that he did not see the vehicle before the collision and therefore could not testify regarding the vehicle's speed. He testified that he did not apply his brakes, nor did he maneuver the steering wheel to avoid contact with Trooper Finaro's vehicle. Claimant Murray further testified that, prior to the impact, he neither observed any emergency flashing lights on Trooper Finaro's vehicle nor heard any sounds. Upon impact, both vehicles spun and simultaneously came to a stop. He stated that after the impact, Trooper Finaro backed up and then turned on his lights. Simultaneously, his OnStar device on his vehicle turned on and advised the person from OnStar that he had been in an accident. Police and ambulance came immediately, and he was placed in the ambulance and transported to the hospital. He testified that he had no interaction with Trooper Finaro.
At her deposition on May 4, 2023, Claimant Burke confirmed that the weather conditions were clear, and the road was dry at the time of the accident. She testified that, while proceeding through the intersection, she saw a vehicle in her peripheral vision approaching at a very fast speed and, approximately one second later, that vehicle hit them. She further testified that at the time of the accident, Claimant Murray was driving at a "normal speed" and that she was looking straight ahead. She testified that she did not feel Claimant Murray apply the breaks or make any steering adjustment to avoid the collision. She further testified that at the time of the accident, neither she nor Claimant Murray were engaged in conversation, the radio was not on, and Claimant Murray was not using his cell phone. She further testified that after the accident, Claimant turned around and saw that the vehicle which struck hers "looked like a police car," but she did not see any flashing lights. Immediately thereafter, she lost consciousness and woke up crying still in the vehicle with Claimant Murray. She too was transported to the hospital via ambulance.
Trooper Finaro provided the following relevant testimony at his deposition on August 9, 2023: on August 31, 2017, he was operating a marked New York State Police vehicle with emergency lights and sirens activated while assisting the Rockland County Police Department in pursuit of a fleeing suspect wanted for assault with a knife on the Tappan Zee Bridge.[FN2]
Trooper Finaro testified that he exited the Bronx River Parkway at the Bronx River Road exit, turned back north to resume pursuit, which at that time was occurring on the Cross County Parkway.
Trooper Finaro stated that he was positioned at a red traffic signal on the exit ramp, stopped behind other vehicles, with his emergency lights and sirens activated. When traffic began to flow, another driver moved aside to allow him to proceed. The ramp light remained red as he turned right to slowly proceed northbound onto Bronx River Road.[FN3]
He testified that he was unaware whether a sign prohibiting a right turn on red was posted. Immediately after the turn—only fifty to sixty feet ahead—was the Wakefield Avenue intersection. He testified that he proceeded northbound with caution, emergency lights and sirens on, looked right and left onto Wakefield Avenue, and did not observe any vehicles approaching.
According to his testimony, Trooper Finaro proceeded slowly through the intersection, looked both right and left, and observed a vehicle approaching from the right (westbound on Wakefield Avenue) which passed through the intersection. He then advanced cautiously, at which point the collision occurred. He stated that he did not see the other vehicle until the moment of impact and believed it came eastbound from his left. As he testified: "I did not see the vehicle before the accident, I looked left, it was clear and I proceeded." At the time of the collision, he estimated his speed at approximately ten miles per hour and did not recall the color of the traffic light at Wakefield Avenue.
In support of its motion, Defendant asserts that the video footage of the accident demonstrably contradicts Claimant Murray's testimony, specifically noting that the video shows that, after both vehicles came to rest following the collision, Trooper Finaro did not back up his vehicle approximately 15 feet and then activate his emergency lights, contrary to Claimant Murray's claim. Defendant further contends that the video demonstrates that Claimant Murray's vehicle was traveling at an accelerated rate of speed immediately prior to entering the intersection. Defendant argues that the evidence establishes that Trooper Finaro was operating a marked emergency vehicle engaged in an emergency operation and that he did not act in reckless disregard when making a right turn on a red at Bronx River Road and proceeding into the Wakefield Avenue intersection before the collision with Claimants' vehicle. Defendant points to the audio recording supporting Trooper Finaro's testimony that he was assisting Rockland County Police in their pursuit of a fleeing suspect, and the video footage showing that his emergency lights were activated at the time of the accident.
Defendant maintains that Trooper Finaro executed a right turn on red, scanning both [*3]directions, before slowly entering the Wakefield Avenue intersection, and did not observe Claimant Murray's vehicle prior to the collision. Defendant challenges Claimant Burke's estimation of Trooper Finaro's speed, asserting that her testimony lacks both foundation and reliability. Defendant contends that Claimant Burke is not qualified to render such an opinion as to vehicle speed, and therefore her assessment is without probative value. Counsel states that the video supports its argument that Trooper Finaro "was not operating [his vehicle] at an unreasonable, reckless rate of speed when he entered the intersection." Counsel contends that regardless of the fact that Trooper Finaro did not see Claimants' vehicle prior to the collision "demonstrates that it may have been a momentary lapse in judgment 
...but it did not rise to the level of reckless disregard for the safety of others."
In opposition, Claimants argue that Defendant's motion must be denied as there are the following triable issues of fact with respect to the contradictions between Trooper Finaro's testimony and the video of the accident annexed to this motion. Specifically, Claimants' contend that:
"Finaro testified that he approached the intersection where the accident occurred slowly and with caution, looking both right and left, before proceeding. Finaro testified that there was no vehicle approaching the intersection from the crossing street. However, the video evidence revealed that Murray's vehicle was already through the intersection when Finaro proceeded and collided with the middle passenger side of Murray's vehicle. In addition, Finaro provided contradictory testimony stating that he saw Murray's vehicle and that he did not see Murray's vehicle. This demonstrates that Finaro's testimony is self-contradictory and is contrary to the video evidence. Moreover, there is no evidence in this record demonstrating that the vehicle sirens were activated. Both Murray and the co-Claimant testify that they did not hear any sirens just prior to impact."
Claimant's also note that Defendant did not provide Trooper Finaro's body camera footage showing that the emergency sirens were on at the time of the collision.
Claimants do not dispute that Trooper Finaro was engaged in an emergency operation, but they maintain the absence of the audio confirming siren activation, coupled with their testimony that they did not hear any siren before the impact—thereby directly contradicting Trooper Finaro's assertion that his siren was activated, therefore, failing to meet its burden to meet the privilege of VTL § 1104. Furthermore, Claimants assert that Trooper Finaro cannot invoke the privilege under VTL § 1104(b) (2), which permits emergency vehicles to proceed past a red signal only "[a]fter slowing down as may be necessary for safe operation." Claimants contend that the video footage clearly shows Finaro accelerating—not slowing—after making a right-on-red turn onto Bronx River Road—dense urban corridor, just 50—60 feet from another intersection, thereby falling outside the statutory exception. They further argue that Trooper Finaro acted recklessly as he proceeded through the intersection "without any regard for his duty to operate safely and avoid harm," noting that he testified that he came to a full stop to ostensibly allow Claimant Murray's vehicle to pass, yet proceeded into the intersection alongside Claimant Murray, when a collision was highly foreseeable. Claimants assert that Trooper Finaro's conduct constitutes "an intentional act of unreasonable character in disregard of a known or obvious risk so great as to make it highly probable that harm would follow," "done with conscious indifference to the outcome."
Claimants maintain that neither Claimant Murray's speed nor conduct contributed to the [*4]accident.
In reply, Defendant maintains that Trooper Finaro was not required to activate his siren in order to invoke the "reckless disregard" standard under VTL § 1104 (c), because the statute explicitly exempts "authorized emergency vehicles operated as police vehicles" from the audible-signal requirement.
Defendant further argues that under VTL § 1104 (b) (4)—which authorizes emergency vehicles to "disregard regulations governing directions of movement or turning in specified directions"—Trooper Finaro was statutorily authorized to turn right at a posted "No Turn on Red" sign during an emergency response. Defendant asserts that both Trooper Finaro's testimony and the surveillance footage show he came to a complete stop, made a slow right turn, and proceeded through the intersection at a reasonable speed, fully consistent with the statutory and common-law duty of safe operation. Defendant maintains that Claimants mischaracterize the deposition testimony in suggesting that Trooper Finaro saw Claimant Murray's vehicle before the collision; in fact, the transcript confirms he did not observe it, and thus could not have "purposefully disregarded its presence." Based on the "undisputed evidence," Defendant concludes that Trooper Finaro exercised proper caution and did not operate his vehicle with reckless disregard for the safety of others.

LAW AND ANALYSIS
The moving party must make a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient admissible evidence to demonstrate the absence of any material issues of fact (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). The court must carefully read the motion papers in the light most favorable to the party opposing the motion (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]). If the moving party fails, the court must deny the motion. If the moving party succeeds, the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact (see id.; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Bald, conclusory assertions or speculation and "[a] shadowy semblance of an issue" are insufficient to defeat a summary judgment motion (S.J. Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341 [1974] [internal quotation marks omitted]). "A motion for summary judgment 'should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility'" (Ruiz v Griffin, 71 AD3d 1112, 1115 [2d Dept 2010], quoting Scott v Long Is. Power Auth., 294 AD2d 348 [2d Dept 2002]). Lastly, summary judgment is particularly uncommon in actions for negligence in which the inquiry is often fact-intensive (see Andre v Pomeroy, 35 NY2d 361, 364 [1974]).
When the driver of an authorized emergency vehicle is involved in an emergency operation, he or she is permitted by statute to engage in privileged conduct that otherwise would be prohibited by certain traffic laws and/or regulations, including, as pertinent here, proceeding "past a steady red signal, 
...but only after slowing down as may be necessary for safe operation"(VTL §§ 1104 [a], [b] [2]). By statute, every police vehicle is an authorized emergency vehicle within the meaning of VTL §§ 1104 [a] and [b] (VTL § 101). Moreover, the operation of an authorized emergency vehicle responding to a police call constitutes an emergency operation (VTL § 114-b). Given the legislative determination that a police dispatch call is an emergency operation, it is irrelevant whether the officers believed that the police dispatch call was an emergency (Criscione v City of New York, 97 NY2d 152, 158 [2001]; see [*5]O'Banner v County of Sullivan, 16 AD3d 950, 952 [3d Dept 2005]).
The foregoing privileged conduct, however, does not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor does it protect such driver from the consequences of his or her reckless disregard for the safety of others (VTL §1104 [e]). Liability may attach under the reckless disregard standard upon a showing that " 'the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow' and has done so with conscious indifference to the outcome" (Frezzell v City of New York, 24 NY3d 213, 217 [2014], quoting Saarinen v Kerr, 84 NY2d 494, 501 [1994], quoting Prosser and Keaton, Torts § 34, at 213 [5th ed]; see also Szczerbiak v Pilat, 90 NY2d 553, 557 [1997]; Green v Covington, 299 AD2d 636, 637-638 [3d Dept 2002]).
"[P]arties may be found to have acted in violation of the statutory formulation [of VTL § 1104 (e)] when they consciously—and, thus, with general intentionality, not necessarily with intent to cause particular injury—disregard known serious risks of harm. The decision to ignore a grave risk, which is likely to result in harm to others, may satisfy the intentional aspect sufficient to impose liability" (Campbell v City of Elmira, 84 NY2d 505, 510-511 [1994]; see Tutrani v County of Suffolk, 64 AD3d 53, 59 [2d Dept 2009]). "Thus, while the Legislature shields [governmental entities] from simple negligence and mere errors in judgment, it also protects innocent victims and the general public by expressly not relieving emergency operators and their [governmental] employers of all reasonable care" (Campbell v City of Elmira, at 513).
The standard of care applicable to vehicles engaged in emergency operations pursuant to VTL § 1104 (b) is the "reckless disregard" standard (Riley v County of Broome, 95 NY2d 455, 466 [2000]). The reckless disregard standard is set forth in Saarinen v Kerr, 84 NY2d 494, 501 [1994], which holds as follows:
"[The reckless disregard] standard demands more than a showing of a lack of 'due care under the circumstances' - - the showing typically associated with ordinary negligence claims. It requires evidence that the 'actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow' and has done so with conscious indifference to the outcome (Prosser and Keeton, Torts § 34, at 213 [5th ed]; see Restatement [Second] of Torts § 500)."
The Fourth Department, citing Kabir in a matter identical to the one at hand, held that a policeman's conduct in stopping and looking both ways before proceeding into the intersection and striking the [Claimant's] vehicle, was not conduct exempted from the rules of the road and that "his 'injury-causing conduct . . . is governed by the principles of ordinary negligence.' " (LoGrasso v City of Tonawanda, 87 AD3d 1390, 1391 [4th Dept 2011] [internal citation omitted]).
Initially, Defendant has established, prima facie, that Trooper Finaro was engaged in an "emergency operation" within the meaning of the VTL and Claimants failed to raise a triable issue of fact in opposition to that threshold determination. As Defendant correctly notes, the definition of "emergency operation" includes "[t]he operation, or parking, of an authorized emergency vehicle, when such vehicle is . . . pursuing an actual or suspected violator of the law" (VTL § 114-b). It is undisputed that Trooper Finaro was engaged in an emergency operation—pursuing a fleeing suspect—at the time of the accident. Accordingly, the conduct of [*6]Defendant's employees will be examined utilizing the "reckless disregard" standard of care.
The Court, however, finds that Defendant has failed to establish, prima facie, that Trooper Finaro was free from fault under the reckless disregard standard of care (Reid v City of New York, 148 AD3d 739, 740 [2d Dept 2017]). Defendant's own submissions containing the contradictory deposition testimony of Trooper Finaro and Claimant Murray establish the existence of triable questions of fact as to whether Trooper Finaro acted with reckless disregard (see Omrami v Socrates, 227 AD2d 459, 459-460 [2d Dept 1996] [holding that conflicting statements in the record present an issue of witness credibility which cannot be resolved on a motion for summary judgment]; Butzer v Scharf, 263 AD2d 862, 863 [3d Dept 1999]).
The dispositive issue for this Court is whether Trooper Finaro approached the Wakefield Avenue intersection slowly and with caution, looking both right and left, before proceeding. Trooper Finaro testified that he slowed his vehicle to 10 miles per hour, looked both ways before entering the intersection, and did not recall the color of the traffic light at Wakefield Avenue. Claimant Murray testified that he did not see Trooper Finaro's vehicle prior to the accident and therefore, did not know his speed and he did not know whether it slowed down as it entered the intersection. Claimant Burke testified that she saw Trooper Finaro's vehicle immediately prior to the accident and it was driving very fast. The conflicting testimony creates a genuine issue of material fact as to Trooper Finaro's actual speed when he entered the intersection, and whether he sufficiently reduced his speed before proceeding through the red light under the conditions at that time.
Viewing the evidence in the light most favorable to the non-moving party, the Court cannot conclude as a matter of law that Trooper Finaro "slow[ed] down as may be necessary for safe operation" (VTL § 1104 [b] [2]).
Accordingly, and based upon on the foregoing, and having considered the statutory factors listed in CPLR § 3212, it is hereby
ORDERED that Defendant's motion for summary judgment dismissing the claim is DENIED; and it is further
ORDERED that the parties shall email the Court at ctcl- mejias-chambers.gov to schedule a pre-trial conference within 5 days of the filing of this Decision and Order.
Dated: August 11, 2025
Hauppauge, New York
___________________________
LINDA K. MEJIAS-GLOVER,
Judge of the Court of Claims
Papers Read on this Motion:
1. Notice of Motion, Affirmation in Support, Exhibits Annexed
2. Affirmations in Opposition, Affidavit in Opposition, Exhibits Annexed
3. Affirmation in Reply, Exhibit Annexed

Footnotes

Footnote 1:The Court of Claims is a court of limited jurisdiction insofar as its reach extends only to New York State and certain public authorities as defendants (see Court of Claims Act § 9; Kevin A. Reilly, Practice Commentaries, McKinney's Cons Laws of NY; NY Const Art VI, § 9). Accordingly, the caption is amended sua sponte to remove the New York State Police to reflect the only properly named defendant, the State of New York.
Footnote 2:In support of its motion, Defendant attached two audio recordings from the Rockland County Sheriff's Department in which the Department requested assistance from the New York State Police in pursuit of a fleeing suspect wanted for felony stabbing who had an outstanding warrant.
Footnote 3:In support of its motion, the Defendant submitted a video recording obtained from an automotive repair shop located at the intersection where the accident occurred. The footage captures the collision from four different angles but does not include any audio.